## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court has jurisdiction over the parties and the subject matter of this action.

The Court has made judgments on the credibility of various witnesses that are consistent with the findings of fact made in this Judgment.

Movant was charged in Case Number 16CR03006321-01 as follows:

| Count | Charge Code & Description | Charge Level | Date Of Offense |
|---|---|---|---|
| 1 | 10021 Murder – 1st Degree | Felony A | October 6, 2003 |
| 2 | 31010 Armed Criminal Action | Felony | October 6, 2003 |

Movant entered a plea of not guilty to each of the charges and a Court Trial was held.

On November 22, 2005 the Court returned a verdict finding Movant guilty of the following charges:

| Count | Charge Code & Description | Charge Level | Date of Offense |
|---|---|---|---|
| 1 | 10021 Murder – 1st Degree | Felony A | October 6, 2003 |
| 2 | 31010 Armed Criminal Action | Felony | October 6, 2003 |

On March 10, 2006, in Division 70 of the Jackson County Circuit Court before the GENE R. MARTIN, Movant was sentenced in 16CR03006321-01, as follows:

| Count | Charge Code & Description | Charge Level | Date of Offense | Term |
|---|---|---|---|---|
| 1 | Murder – 1st Degree | Felony A | October 6, 2003 | Life |
| 2 | Armed Criminal Action | Felony | October 6, 2003 | Life |

Movant is currently incarcerated at the Crossroads Correctional Center, 1115 East Pence Road, Cameron, Missouri 64429.

Movant timely filed his pro se Motion to Vacate, Set Aside or Correct Judgment and Sentence.

On August 7, 2008, Movant filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence.

Movant alleges several grounds for relief under Rule 29.15. The Court will address each of the claimed grounds for relief in this decision.



Case 4:12-cv-00416-BP Document 1-1 Filed 03/30/12 Page 1 of 23

On September 4, 2009, the Court heard evidence and argument in the above captioned case.

## SUMMARY OF APPLICABLE LAW

MOVANT seeks post-conviction relief. The scope of the remedy available to MOVANT is set out in Rule 29.15, which reads in pertinent part:

**29.15. Conviction After Trial--Correction**

> **(a) Nature of Remedy--Rules of Civil Procedure Apply. A person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15. This Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated. The procedure to be followed for motions filed pursuant to this Rule 29.15 is governed by the rules of civil procedure insofar as applicable.**

The purpose of this rule governing motions to vacate a judgment and sentence is to determine whether or not Movant's original trial was violative of any constitutional requirements, or, whether or not the judgment is otherwise void. *Green v. State*, 581 S.W.2d 478, (App.1979). This process is a means for review of alleged constitutional defects which were not knowingly and voluntarily waived and of asserted defects not passed upon by reviewing court on direct appeal of case. *Wilhite v. State*, 614 S.W.2d 33, (App.1981).

A post-conviction proceeding cannot function as substitute for second appeal but, rather, it is forum for review of alleged constitutional deficiencies which were not passed upon by reviewing court in direct appeal of case. *Pollard v. State*, 628 S.W.2d 430, (App.1982).


Case 4:12-cv-00416-BP Document 1-1 Filed 03/30/12 Page 2 of 23

The thrust of Movant's motion is that his trial counsel was ineffective.

**Denial Of Effective Assistance Of Counsel**

18 A movant in proceedings to vacate sentence who alleges denial of effective assistance of counsel must demonstrate that alleged neglect of counsel with respect to investigation of the case resulted in prejudice to defendant's position and deprived the Movant of substantial rights. *McKnight v. State*, 497 S.W.2d 201, (App.1973). To prevail on a claim of ineffective assistance of counsel, Movant must show that his trial counsel's performance was not only deficient, but also that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A Movant "must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo.banc 1987) (emphasis in original). The Court may proceed directly to the issue of prejudice without first determining whether counsel's conduct was deficient. *Strickland*, supra at 697; *Sanders*, supra.

Prejudice is not presumed from a showing of deficient performance by counsel, but must be affirmatively proven. *Strickland*, supra at 693; *Sidebottom v. State*, 781 S.W.2d 791 (Mo.banc 1989). A Movant has the burden of establishing prejudice by a preponderance of the evidence. *State v. Young*, 844 S.W.2d 541 (Mo.App. 1992). In order to show prejudice, Movant must show that there is a reasonable probability that, absent the alleged error, the results of the proceeding would have been different. *State v. White*, 798 S.W.2d 694 (Mo. 1990). Reasonable probability has been defined to be ". . . [p]robability sufficient to undermine . . . confidence in the outcome [of the proceeding]." Id., at 697. In order to determine if a reasonable probability exists, the Motion Court

must consider the totality of the evidence. *Strickland*, supra at 691-96; *Jones v. State*, 773 S.W.2d 156 (Mo.App. 1989).

Further, in determining if counsel's performance was deficient, this Court must consider whether counsel's conduct was "reasonable". The Motion Court begins its review of trial counsel's competency and reasonableness of trial counsel's conduct with the presumption that counsel is competent. *Amrine v. State*, 785 S.W.2d 531 (Mo. banc 1990). A Movant must also overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Starks*, 856 S.W.2d 334 (Mo.banc 1993).

The Court, in the *Jones*, supra, case admonished:

> **The motion court should make every effort to eliminate the distortion wrought by hindsight and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. There is a strong presumption that criminal defense counsel's conduct falls within the "wide range of professional assistance," and a Movant must overcome the presumption that certain actions of counsel might be regarded as sound trial strategy. Jones at 158.**

For Movant to be granted relief on his post-conviction motion, he must meet specific pleading requirements and will be denied relief if those requirements are not met. To be successful on the issue of ineffectiveness of counsel, Movant must satisfy three requirements: 1) he must have alleged facts, not conclusions, which if true would warrant relief; and 2) the allegations of fact must not be refuted by the record; and 3) the matters complained of must have resulted in prejudice to Movant's defense. State v. Pendas, 855 S.W.2d 512, 516 (Mo. App. 1993); Boggs v. State, 742 S.W.2d 591, 594 (Mo. App. 1987); Milentz v. State, 785 S.W.2d 722, 724 (Mo.App. 1990); Short v. State, 771 S.W.2d 859, 863 (Mo.App. 1989); Thomas v. State, 736 S.W.2d 518, 519 (Mo. App. 1987).

Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Edwards v. State*, 200 S.W.3d 500, (Mo. 2006).

**CONCLUSIONS OF LAW**

The allegations set forth by Movant in both his pro se and amended motions are categorized individually under the points as set out infra and the facts and law applicable to each point are set forth in that part of the opinion which discusses the point.

The Court finds and concludes that the allegations contained in Movant's Motions are without merit and therefore are overruled for the following reasons:

**Ground 1**

In Movant's ground 1, he claims he suffered ineffective assistance of counsel when trial counsel misled Movant to believe there was no such expert as a forensic or crime scene reconstructionist, and when he failed to retain and consult with a qualified forensic reconstructionist prior to Movant's trial.

Trial Counsel's decision not to call a forensic expert or crime scene reconstructionist as a witness to testify for the defense did not fall below a reasonable standard. At the evidentiary hearing Trial Counsel testified Movant asked for a forensic reconstruction of the crime scene located at 29th and Prospect in the parking lot of the Fish Town Restaurant. Trial Counsel testified he informed Movant a reconstruction of the scene in the Fish Town parking lot could not be done because the scene had been contaminated by emergency vehicles and emergency workers. Trial Counsel testified at the 29.15 hearing that if he had the report prepared by Mr. Rini he would not have called him at trial as a matter of trial strategy. Trial Counsel further testified that the findings in Mr. Rini's report were incomplete because the findings did not consider the two other


Case 4:12-cv-00416-BP Document 1-1 Filed 03/30/12 Page 5 of 23

crimes scenes associated with the Murder of Larry White. Trial Counsel also testified Mr. Rini did not offer anything that Trial Counsel had not already adduced through the State's witnesses.

This Court finds Trial Counsel's Decision not to call a forensic expert in this case was reasonable and well within sound trial strategy. "The choice of witnesses is ordinarily a matter of strategy and will not support an ineffective assistance of counsel claim." *Strong v. State*, 263 S.W.3d 636,652 (Mo. 2008); *quoting State v. Harris,* 870 S.W.2d 798, 816 (Mo banc. 1994). Trial Counsel's choice not to call Mr. Rini, or some other reconstruction expert, to testify is a matter of sound trial strategy. The decision of trial counsel not to present a reconstruction expert as a witness does not support a claim for relief under Rule 29.15. Movant is not entitled to relief under Rule 29.15 based upon Ground 1.

**Ground 2**

In Movant's ground 2, he claims he suffered ineffective assistance of counsel when trial counsel failed to contact, interview, and call to testify for the defense potential witness Margo Thomas.

The evidence did demonstrate that Trial Counsel's made the decision not to contact, interview, or call Margo Thomas to testify as a potential witness for the defense at trial. Movant has failed to show how the testimony of this witness would have changed the outcome of the trial. Despite Movant's contention that Ms. Thomas's testimony would have supported his defense that he was not the person that shot and killed Larry White, Margo Thomas did not testify at the evidentiary hearing. Therefore the Court does not have any evidence to determine what this witness would have said if she had been called to testify at trial.

Furthermore, Trial Counsel testified he did not call this witness as a matter of trial strategy. He specifically stated at the 29.15 evidentiary hearing that he believed Margo Thomas would help the State's case rather than advance the defense's case. There is no reason presented by the Movant that the testimony of Margo Thomas would have qualifiedly supported his defense. Movant has additionally failed to show that he suffered actual prejudice from trial counsel's failure to call Ms. Thomas as a witness. Trial Counsel's choice not to call this witness to testify is a matter of sound trial strategy.

Movant is not entitled to relief under Missouri Supreme Court Rule 29.15 based upon Ground 2.

**Ground 3**

In Movant's ground 3, he claims he suffered ineffective assistance of counsel when trial counsel failed to move to exclude the trial testimony of state's witnesses Lorianne Morrow and Wendy Locett..

Trial Counsel's decision not to attempt to exclude the testimony of State's witnesses Lorianne Morrow (Tr. 104-157) and Wendy Lockett (Tr. 183-238) did not fall below a reasonable standard and did not prejudice Movant. Ms. Lockett and Ms. Morrow were deposed and more importantly had testified in the first trial. Trial Counsel had the depositions and trial transcripts of these witnesses prior to the second criminal trial, and made the decision not to file a motion or object to their testimony. Although Trial Counsel decided not to file a motion objecting to these witnesses, Movant filed his own motion which was rejected by the Court. Movant claims that the testimony of these two witnesses was illogical and inconsistent, both between the witnesses and with the physical evidence and the autopsy reports. Despite Movant's contention, there was no legal basis to exclude either of the witnesses. Trial Counsel is not ineffective for failing

to file a motion or make an objection that is not supported by law. Movant is not entitled to relief under Missouri Supreme Court Rule 29.15 based upon Ground 3.

**Ground 4**

In Movant's ground 4, he claims he suffered ineffective assistance of counsel when appellate counsel failed to raise the following claims on Movant's direct appeal:

(1) The identification procedures used by the police were suggestive,

(2) The Trial Court erred by not ruling on Movant's motion for a pretrial evidentiary hearing to discuss matters of discovery and suppression of certain witnesses' testimony,

(3) The Trial Court erred in overruling Movant's motion to dismiss the pending charges, after Movant was denied his right to a speedy trial, in that the State dismissed the charges against Movant and then immediately re-filed them,

(4) The Trial Court erred in admitting State's Exhibit 45, the prior inconsistent statement of Felicia Jones, into trial,

(5) Movant maintains that the State committed *Brady* violations before and after his trial,

(6) The Trial Court erred in allowing the state to introduce the testimony of Detective Donie Hoffman, and in allowing the State to introduce the exhibits that were used during Detective Hoffman's testimony,

(7) The Trial Court erred in overruling Movant's motion to exclude the testimony of Wendy Lockett and in allowing the State to call Wendy Lockett to testify at trial,

(8) The Trial Court erred in overruling Movant's motion to discharge due to defects in the charging documents,

(9) The Trial Court erred in overruling Movant's second motion for bill of particulars, without even considering that motion, and

(10) Movant maintains that the cumulative errors of the trial court violated his rights of due process of law and to a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. Movant maintains that he provided

> these claims to Appellate Counsel prior to her filing of Movant's brief on his direct appeal, and that despite his requests that counsel raise the foregoing issues, Ms. Sanders raised only two issues on appeal. In Movant's amended 29.15 Motion he asserts that a reasonable probability exists that the result of the appeal would have been different if appellate counsel had not failed to raise these issues.

Appellate Counsel, Ruth Sanders, testified at the 29.15 evidentiary hearing. She stated that because the criminal trial was a judge tried case, her approach to Movant's appeal was different. In a judge tried case the judge is the finder of fact and is presumed to disregard erroneous or inadmissible evidence. *State v. Rank*, 849 S.W.2d 230, 233 (Mo. App. 1993). Appellate Counsel further testified based on the nature of the trial she chose to brief and argue what she believed to be the two best points for appeal. "Counsel does not have a duty to raise every issue asserted in the motion for new trial and no duty to present non-frivolous issues where she decides strategically to winnow out arguments in favor of other arguments." *Storey v. State*, 175 S.W.3d 116, 148 (Mo. Banc. 2005).

The Trial Court made detailed findings of the facts in the trial, and stated it evaluated the inconsistencies between the witnesses. The Trial Court also meticulously discussed the Movant's discovery motions and other pro se motions. There is nothing to indicate Appellate Counsel's approach to Movant's appeal in this case was unreasonable. Furthermore, there is nothing in the record to indicate that if she would have briefed all of the issues raised in the Movant's amended motion that the Court of Appeals would have ruled differently. In fact quite to the contrary, the Court of Appeals specifically stated in it's order, "there is ample evidence to show Carnes did commit the shooting." *Memorandum Order*, p. 3.

Movant has failed to prove any prejudice and has failed to show that but for the actions of Appellate Counsel, there would have been a different outcome. Movant is not entitled to relief under Missouri Supreme Court Rule 29.15 based upon Ground 4.

**Ground 5**

In Movant's ground 5 he claims the Trial Court erred in failing to grant the Movant's motion for judgment of acquittal notwithstanding the verdict. A 29.15 motion is not the proper place to raise allegations of trial court error. "Post-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review. *State v. Redman,* 916 S.W.2d 787, 793 (Mo. 1996). Therefore Movant is not entitled to relief under Missouri Supreme Court Rule 29.15 based upon Ground 5.

**JUDGMENT AND ORDERS**

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that for the reasons set forth hereinabove in the attached Findings of Facts and Conclusions of Law, the Court finds Movant's petition for relief pursuant to Missouri Supreme Court Rule 24.035 should be, and it is hereby overruled and dismissed with prejudice.

Dated: JULY 26, 2010

W STEPHEN NIXON

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was mailed via U.S. First Class mail, postage prepaid, on JULY 26, 2010, to:

SUSAN LYNN HOGAN
920 MAIN ST STE 500
KANSAS CITY, MO 64105



# IN THE MISSOURI COURT OF APPEALS WESTERN DISTRICT

| | | |
|---|---|---|
| KEITH L. CARNES, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | WD72916 |
| | ) | |
| STATE OF MISSOURI, | ) | Filed: November 8, 2011 |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM SUPPLEMENTING ORDER AFFIRMING JUDGMENT PURSUANT TO RULE 84.16(b)**

This memorandum is for the information of the parties and sets forth the reasons for the order affirming the judgment.

**THIS STATEMENT DOES NOT CONSTITUTE A FORMAL OPINION OF THIS COURT. IT IS NOT UNIFORMLY AVAILABLE. IT SHALL NOT BE REPORTED, CITED, OR OTHERWISE USED IN UNRELATED CASES BEFORE THIS COURT OR ANY OTHER COURT. IN THE EVENT OF THE FILING OF A MOTION TO REHEAR OR TRANSFER TO THE SUPREME COURT, A COPY OF THIS MEMORANDUM SHALL BE ATTACHED TO ANY SUCH MOTION.**

Keith Carnes appeals the judgment of the motion court denying his Rule 29.15 motion for postconviction relief following an evidentiary hearing. Carnes sought to vacate his convictions for first-degree murder, section 565.020, RSMo 2000, and armed criminal action, section

571.015, RSMo 2000, and concurrent sentences of life imprisonment without probation or parole and life imprisonment, respectively. He claims that he received ineffective assistance of counsel when counsel misled him to believe that there was no such expert as a forensic or crime scene reconstructionist and when counsel failed to retain and call such expert to testify at trial. The judgment is affirmed.

**Facts**

On October 6, 2003, the victim, Larry White, was selling crack cocaine on the corner of 29th and Olive in Kansas City. Carnes was sitting on the balcony of an apartment across the street. Carnes sold crack cocaine from that apartment. Carnes shouted to the victim that he was on Carnes's territory and could not sell drugs in the area. Carnes then produced a gun and began to chase the victim, shooting at him as he ran away. Two witnesses who knew Carnes, Lorianne Morrow and Wendy Lockett, saw him chasing and shooting at the victim. They saw Carnes eventually catch up to the victim in the parking lot of Fish Town restaurant and shoot him several times as he lay on the ground. Ms. Lockett heard Carnes say, "Die motherfucker, you're going to die."

The victim suffered three gunshot wounds, two to the chest and one to the head. He also suffered a graze wound to his side. When authorities discovered the victim in the parking lot of the Fish Town restaurant, he was lying on his back, face up. Dr. Thomas Gill, the deputy medical examiner for Jackson County, testified that the two wounds to the victim's chest indicated that the bullets had traveled from the back to the front of his body before exiting. The following exchange then took place on cross-examination between Dr. Gill and defense counsel:

> Q: Okay. So would it be fair to say that it appeared that the person, the victim here—these wounds would not have come if he were facing his shooter?
>
> A: That's correct.

Q: Okay. And that would be both of these wounds, [the wounds to the chest], correct?

A: Correct.

Q: And also the graze wound?

A: Yes.

Q: All right. Now, if a person is laying on the ground and faceup, would you expect to find [the chest wounds] if they were shot while they were laying on the ground faceup?

A: Those would be very awkward. I mean, I suppose it's physically—well, with a long-barreled weapon, it would be very, very awkward....

Q: So those wounds would be inconsistent with—

A: A person laying faceup. That's what we're talking about?

Q: Right.

A: Okay. Good.

Q: So, Dr. Gill, based upon your experience and within a reasonable degree of medical certainty, would you conclude that [the chest wounds] and the graze wound did not come from shots from someone standing directly over the body?

A: Directly over the body?

Q: Yes.

A: Yes.

The medical examiner further testified that the gunshot wound to the victim's head, which resulted in his death, entered above his right ear and passed from the back to the front of the skull before exiting. He stated on cross-examination that it was "possible" that such a wound was inconsistent with someone being shot while lying face up, on his back. He concluded, "I don't think there's any evidence one way or the other. I think it's kind of an open question.

There is no evidence that the person was standing over them, but it's possible."

Officer Shawn Campbell testified that he investigated the crime scene at Fish Town restaurant, and, after securing the scene, did not discover any shell casings in the area. Gregory Van Ryn, a crime scene technician, testified that after canvassing the parking lot of the Fish Town restaurant, he found a small pool of blood but no shell casings or spent bullets. He further testified that he found eleven shell casings at 2846 Wabash and another shell casing at the corner of 29th and Wabash.

Aletha Shepard-Bowen, the resident of 2846 Wabash, testified that on the night of the shooting, she heard shots fired from 29th Street, to the side of her house. She later heard several more shots "further up the street back towards Prospect." After the shooting ceased, Ms. Shepard-Bowen went outside to investigate and found five shells on her front porch. She later gave them to a police officer.

Carnes waived a jury trial, and the trial court convicted him of first-degree murder and armed criminal action and sentenced him to concurrent terms of life imprisonment without the possibility of parole and life imprisonment, respectively. This court affirmed the convictions and sentences on direct appeal. *State v. Carnes*, 241 S.W.3d 344 (Mo. App. W.D. 2007).

Thereafter, Carnes filed a *pro se* Rule 29.15 motion for postconviction relief. Appointed counsel filed an amended motion on Carnes's behalf. The motion alleged, in pertinent part, that defense counsel was ineffective in misleading Carnes to believe that there was no such expert as a forensic or crime scene reconstructionist and failing to retain and call such expert to testify at trial. It further alleged that after Carnes's conviction, Carnes's family located a forensic reconstructionist, Gary Rini, and retained him to analyze the State's evidence.

At the evidentiary hearing, Carnes testified that before trial, he asked defense counsel to

obtain a reconstruction expert because he believed that witnesses' statements were inconsistent with the physical evidence. Specifically, Carnes was concerned because the witnesses indicated that Carnes shot the victim at close range while standing over him in the Fish Town parking lot but nothing in discovery indicated that any bullets were retrieved from the parking lot and there was no physical evidence that a shooting took place there. Carnes further testified that when he asked about a forensic reconstructionist, defense counsel "play[ed] like he doesn't know what I'm talking about like there's no such thing."

Defense counsel also testified at the hearing. He stated that the defense at trial was that the physical evidence did not support the eyewitness testimony and that he attempted to establish such defense through cross-examination of the State's witnesses. He also explained that when Carnes first mentioned the idea of a reconstruction expert, he responded that the crime scene had been contaminated, that nobody had cordoned off the crime scene, and so "it would be difficult to find somebody who could reconstruct that crime scene." Counsel further testified that he did not have any contact with Mr. Rini until after the trial and that he eventually received a report from him concluding that, based on the pictures of the crime scene and the autopsy report, the testimony of the eyewitnesses was inconsistent with the physical evidence. Counsel continued:

> But there's a problem with that because Mr. Rini had never actually come out to Kansas City to observe the actual crime scene, and he was basing it just on pictures that had been sent to him. I discussed this with him a couple of times about how if he did testify, it would only be cumulative to what we were already doing and that I didn't know whether they would sustain the objection of it just being an opinion.

Counsel also testified that he was concerned that Mr. Rini had not conducted any analysis of the other crime scene where shell casings were found:

> There's also the fact that on the corner of 29th and Wabash, there was a house with a fence there, and there were shell casings found there on the porch and in the yard area of that house. There was shell casings found there. Okay.

> And there was a witness [Ms. Shepard-Bowen], the lady who lived in that house, who came to court to testify that she heard shooting from—in her yard and she actually called the police to point out to them where certain shell casings were located in her front yard and on her porch. That would have been consistent with the testimony of both Ms. Morrow and Ms. Lockett that the first shots had occurred on that corner area.
>
> So you got two different crime scenes. Mr. Rini was only testifying about the scene at the Fish Town. He had no testimony about the original crime scene down at the house. So, you know, a matter of trial strategy I decided, well, if you call this guy, he's only going to be able to testify about part of it anyway.

Defense counsel ultimately testified that even if he had possessed Mr. Rini's report before trial, he would not have called him to testify because his testimony would have been cumulative "and plus he would only be addressing that one area and not everything. So I would think the prosecutor would tear him apart saying you—you've not dealt with these other two locations."

The parties stipulated to the admission of Mr. Rini's deposition at the evidentiary hearing. In it, Mr. Rini testified that he reviewed the police reports, autopsy report, and photographs in the case. He was asked to look at photographs of the crime scene to determine whether the blood stain patterns were consistent with someone being shot at close range but could not make such determination because the stains were already covered with "blue absorbent chux," which contaminated them. Mr. Rini further testified that he examined the autopsy report and the description of the victim's gunshot wounds to determine whether the victim could have been shot by someone standing over him while he was lying on the ground. He concluded that based on the absence of bullets or shell casings in the parking lot and the angle of the bullet wounds on the victim's body, the physical evidence did not support the conclusion that the victim was shot while lying in the parking lot.

Following the evidentiary hearing, the motion court denied Carnes's motion. This appeal by Carnes followed.

**Analysis**

In his sole point on appeal, Carnes claims that the motion court clearly erred in denying his motion for postconviction relief. He asserts that counsel was ineffective in misleading him to believe that there was no such expert as a forensic or crime scene reconstructionist and failing to retain and call such expert to testify at trial.

Appellate review of the denial of a postconviction motion is limited to determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Zink*, 278 S.W.3d at 175 (quotes and citations omitted).

On a claim of ineffective assistance of counsel, the burden is on the movant to prove by a preponderance of the evidence that (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) counsel's failure prejudiced him. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A strong presumption exists that counsel's conduct was reasonable and effective. *Id.* at 176. To show prejudice, the movant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

Trial counsel's choice of witnesses is a matter of trial strategy. *Bucklew v. State*, 38 S.W.3d 395, 398 (Mo. banc 2001). "Strategic choices made after thorough investigation are essentially unchallengeable." *Bucklew*, 38 S.W.3d at 398. To establish ineffective assistance of counsel for failure to call a witness, movant must show that the witness could have been located by reasonable investigation, the witness would have testified if called, and the testimony would



NOTICE
THIS OPINION IS NOT FINAL UNTIL ALL POST HANDDOWN MOTIONS HAVE BEEN DISPOSED OF AND THE MANDATE ISSUED AND RECEIVED.

**In the**
# Missouri Court of Appeals
**Western District**

| | |
|---|---|
| STATE OF MISSOURI,<br>Respondent,<br>v.<br>KEITH L. CARNES,<br>Appellant. | WD 67426<br>Filed: October 2, 2007 |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY**
**The Honorable Gene R. Martin, Judge**

Keith Carnes appeals his conviction after a non-jury trial of one count of murder in the first degree punishable by life imprisonment without the possibility of parole and one count of armed criminal action in the shooting death of Larry White. His first point on appeal contends that the trial court erroneously allowed evidence of a search of his residence, far from where the crime occurred, which uncovered drug paraphernalia, money, and weapons. This, he contends, was impermissible evidence of "other bad acts." He finally contends that there was insufficient evidence to permit the judge as trier of fact to reasonably conclude that he knowingly caused the death of Larry White by shooting him or that he did so after deliberation. We affirm.

In the light most favorable to the verdict, the evidence showed that the victim was selling crack cocaine at the corner of 29th and Olive. Carnes was sitting on the balcony of an apartment across the street. Carnes sold drugs from that apartment, although he lived in a residence on East 58th Street. Carnes yelled at White that he was on Carnes's territory and could not sell drugs in this area. Apparently, some words were exchanged and Carnes produced a gun and began to chase White, shooting at him as he ran away. The chase was observed by several witnesses until Carnes caught up with White in a parking lot at 29th and Prospect. Two witnesses saw Carnes shoot the victim several times as he lay on the ground and one heard Carnes say, "Die motherfucker, you're going to die." The medical examiner testified that White suffered four gunshot wounds, including two to his back and one to the head. The head gunshot was fatal.

**The Record Does Not Show that the Trial Court Relied Upon the Evidence from the Search Even if it Was Not Admissible.**

Carnes contends that the items found in the search of his home, far from the scene of the shooting, were evidence of "other bad acts" which were not admissible under *State v. Burns,* 978 S.W.2d 759, 760 (Mo. banc 1998), as they were neither logically nor legally relevant. The State contends that the evidence was properly admitted over Carnes's objection because it tended to prove Carnes was a drug dealer, and ultimately proved his motive for shooting White. The trial court overruled the objection, admitting the evidence "for whatever it's worth."

We find it unnecessary to decide whether the evidence was admissible because there is nothing in the record to indicate that the trial judge relied upon this evidence in making his finding of guilt. The erroneous admission of evidence in a court-tried case rarely rises to the level of prejudicial error unless the record shows that the court relied upon the erroneous evidence. *State v. Isom,* 660 S.W.2d 739, 741 (Mo. App. E.D. 1983). Although Carnes contends that the trial court relied upon this evidence, he points to nothing in the record or findings that supports his claim. Conversely, there is ample evidence to show that Carnes did commit the shooting and that motive, not an element of the crime, was not necessary or particularly important to a finding of guilt. Point denied.

**There Was Sufficient Evidence of Deliberation**

Our review is limited to determining whether the verdict is supported by evidence from which reasonable jurors, or in this case, the trial judge, could find the defendant guilty of first degree murder. *State v. Blewett,* 853 S.W.2d 455, 458 (Mo. App. W.D. 1993). *See also State v. Johnson,* 81 S.W.3d 212, 215 (Mo.App. S.D. 2002) (applying this same standard in a court-tried criminal case). In this case, Carnes claims that there is not sufficient evidence to show that he killed White after deliberation. We disagree. Carnes had to jump or climb off a balcony to chase White after warning the victim that he was intruding on his drug sale territory. He chased and shot at White for almost two tenths of a mile. Two gunshots entered White's back, consistent with a conclusion that they were sustained during the chase. The victim was found lying on his back in the parking lot. The medical examiner testified that, while awkward, the head wound

could have been sustained in that position, but it was unlikely that the back wounds were. A witness heard Carnes say that he was going to kill White just before the last shot was fired. There is no merit to White's argument. Point denied.

The judgment of conviction is affirmed.

Ronald R. Holliger, Presiding Judge

Harold L. Lowenstein, Judge, and James M. Smart, Jr., Judge, concur.

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY, MISSOURI

KEITH L CARNES,

Plaintiff,

v. Case No.: 0816-CV04757

STATE OF MISSOURI,

Defendant.

# JUDGMENT ON MOTION FOR POST-CONVICTION RELIEF (PURSUANT TO RULE 29.15)

On September 4, 2009, Plaintiff, KEITH L CARNES, appeared in person and by counsel, SUSAN LYNN HOGAN. Defendant, STATE OF MISSOURI, appeared by counsel, DAWN PARSONS.

The parties announced that they were ready for trial. The parties waived trial by jury and agreed to try the case to the Court without a jury.

The case was submitted to the Court upon the pleadings of record.

Evidence was heard on September 4, 2009. The Court also heard arguments of counsel.

After evidence was concluded the Court granted the parties the opportunity to present proposed judgments and advised the parties that the proposed judgments were part of the record that the court would consider in rendering its Judgment. The parties were advised that the case would not be considered submitted until the Court received each proposed judgment.

On JULY 26, 2010, the Court again takes up this matter. The Court makes the following findings and judgment:

have provided a viable defense. *Id.*

Carnes did not clearly show that the failure to call Mr. Rini was not trial strategy. Dr. Gill, the medical examiner, admitted that the wounds to the victim's chest were inconsistent with him being shot while lying face up and that it was "possible" that the injury to his head was inconsistent with him being shot while lying in that position. Additionally, Officer Van Ryn testified that if shots had been fired in the Fish Town parking lot, he would have expected to find shell casings there but that he did not. Mr. Rini's conclusion, based on the absence of bullets or shell casings in the parking lot and the angle of the bullet wounds on the victim's body, that the physical evidence did not support the conclusion that the victim was shot while lying in the parking lot would have been cumulative to the evidence adduced through the State's witnesses. Failure to produce cumulative evidence does not constitute ineffective assistance of counsel. *Ferguson v. State*, 325 S.W.3d 400, 417 (Mo. App. W.D. 2010).

Furthermore, defense counsel testified that he chose not to call Mr. Rini to testify because Mr. Rini's report was incomplete. Mr. Rini analyzed only the Fish Town parking lot crime scene and did not examine Ms. Shepard-Bowen's yard where police found several shell casings. In light of Mr. Rini's susceptibility to cross-examination regarding the incompleteness of his report, defense counsel was not ineffective in not calling him as a witness. *See Bucklew*, 38 S.W.3d at 398 (defense counsel was not ineffective for failing to call an expert whose testimony would have had a mixed impact). The trial court did not clearly err in denying Carnes' motion for postconviction relief.

The judgment is affirmed.