# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| KEITH L. CARNES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 12-0416-CV-W-BP-P |
| | ) | **ECF** |
| LARRY DENNEY, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONSE TO ORDER TO SHOW CAUSE WHY A WRIT OF HABEAS CORPUS SHOULD NOT BE GRANTED

### Statement of Custody and Parties

Named petitioner, Keith Carnes, is currently incarcerated at the Crossroads Correctional Center located in Cameron, Missouri, because of the sentence and judgment of the Circuit Court of Jackson County, Missouri. Petitioner was found guilty of murder in the first degree for which he was sentenced to life imprisonment without the possibility of parole in the Missouri Department of Corrections, and armed criminal action for which he was sentenced to life imprisonment in the Missouri Department of Corrections, with the two sentences to be served concurrently. Petitioner has yet to complete service of these sentences. Named respondent, Larry Denney, Warden of the Crossroads Correctional Center, is petitioner's custodian and is the proper party respondent. 28 U.S.C. §2254, Rule 2(a).

## Statement of Exhibits

1.     Respondent's Exhibit A is a copy of the trial transcript.

2.     Respondent's Exhibit B is a copy of the direct appeal legal file.

3.     Respondent's Exhibit C is a copy of petitioner's brief on direct appeal.

4.     Respondent's Exhibit D is a copy of the State's brief on direct appeal.

5.     Respondent's Exhibit E is a copy of the opinion of the Missouri Court of Appeals, Western District, affirming the conviction and sentence.

6.     Respondent's Exhibit F is a copy of the transcript from the hearing on the post-conviction motion.

7.     Respondent's Exhibit G is a copy of the post-conviction appeal legal file.

8.     Respondent's Exhibit H is a copy of Exhibit 1 (the Deposition of Gary Rini and supporting exhibits) from the post-conviction appeal.

9.     Respondent's Exhibit I is a copy of petitioner's brief on post-conviction appeal.

10.     Respondent's Exhibit J is a copy of the State's brief on post-conviction appeal.

11.     Respondent's Exhibit K is a copy of the opinion of the Missouri Court of Appeals, Western District, affirming the denial of post-conviction relief.

12.     Respondent's Exhibit L is a copy of petitioner's pro se motion to re-open the post-conviction case.

13.     Respondent's Exhibit M is a copy of the order denying petitioner's motion to re-open the post-conviction case.

14.     Respondent's Exhibit N is a copy of documents from a pro se application for writ of mandamus filed by petitioner related to the failure to re-open the post-conviction case.[1]

_____

[1] To the extent relevant to the present petition, the application for writ of mandamus was summarily denied.  Document 1-2, page 6.  The claim underlying the motion to re-open the post-conviction proceedings was based on the alleged failure of the judgment to properly address all issues raised in the post-conviction motion.  Respondent's Exhibit M.  This allegation could have been raised as a claim of error on the appeal from the denial of the post-conviction motion.  See, e.g., *Taylor v. State,* 269 S.W.3d 42 (Mo. App. W.D. 2008).  Because the issue could have been properly raised as a claim of error on the pending appeal, the application for a writ of mandamus was not an appropriate remedy.  These documents are attached solely to provide a

## Summary of Argument

Petitioner raises four grounds for relief.

As an initial point, as part of the first ground, petitioner includes an allegation that he is actually innocent based on a letter received from a fellow inmate in which that inmate makes allegations which would impeach the credibility of one of the three eyewitnesses and an affidavit from another acquaintance about alleged communications from another eyewitness recanting her testimony. Actual innocence is not an independent ground for relief, but rather is a justification excusing the failure to properly exhaust an otherwise valid constitutional claim in state court. In light of the weakness of this new evidence and the remaining evidence against petitioner, this evidence does not rise to the high standard required for a claim of actual innocence. Furthermore, even if petitioner has made an adequate showing of actual innocence, none of the "merits" claims in his petition have actual merit.

None of the first three grounds was fairly presented and properly exhausted in state court. Petitioner makes no allegation that would rise to the level of cause. Additionally, Ground Two and Ground Three were

---

complete record of the actions taken in state court related to the post-conviction proceedings.

presented in petitioner's amended post-conviction motion, but not included in the appeal from the denial of that amended post-conviction motion. While ineffective assistance of motion counsel can be cause for the failure to properly exhaust a claim in state court, ineffective assistance on the appeal from the denial of that motion is not.

In Ground One, petitioner complains about the failure to disclose that one of the eyewitnesses (Wendy Lockett) was the confidential informant referred to in an early report on the case. However, petitioner has no basis for his allegation that Ms. Lockett was the confidential informant – the letter from Thadeus Wilson which is supposedly the basis of this claim does not mention the date on which police encountered Mr. Wilson and Ms. Lockett. Furthermore, the information received from the confidential informant is not inconsistent with the testimony of Ms. Lockett, and, as such, the "undisclosed information" would not have been exculpatory or material.

In Ground Two, petitioner claims that there was insufficient evidence of guilt. However, this claim is based on the assumption that Ms. Lockett and Lorraine Morrow are not credible, rather than the appropriate standard of looking at the evidence in the light most favorable to conviction. This claim also ignores that petitioner was charged with acting in concert in the shooting death of Larry White. The statement of Felicia Jones, which was admitted into evidence as substantive evidence of guilt, indicated that

petitioner was one of the people chasing after and shooting at Larry White during the chase. Thus, even without the testimony of Ms. Lockett and Ms. Morrow that they saw petitioner firing one or more shots at Mr. White when Mr. White was on the ground at the end of the chase, there was sufficient evidence to show that petitioner acted in concert with others to kill Mr. White.

In Ground Three, petitioner claims that the State suborned perjury and that Ms. Lockett and Ms. Morrow should have been precluded from testifying because their evidence was unreliable. Petitioner fails to show that the testimony of Ms. Lockett and Ms. Morrow was perjury, instead merely showing that it contradicted other testimony and earlier statements by the two witnesses which is insufficient to show that the State knowingly used false testimony. Petitioner's claim that the witnesses was unreliable does not state a legal basis for the exclusion of their testimony being based on case law about identification testimony which only applies if there is a showing of a improper suggestion in the identification process by a state actor.

In Ground Four, petitioner claimed that trial counsel was ineffective for failing to hire a forensic expert to testify as to why the evidence was inconsistent with parts of the testimony of Ms. Morrow and Ms. Lockett. However, the evidence showed that trial counsel reasonably expected and did obtain substantially similar testimony during the cross-examination of the

State's witnesses including the crime scene technician and the medical examiner. Petitioner has not shown that a competent attorney would have believed that he needed to consult with an expert to explain this evidence further, nor has he shown that the minimal differences between the testimony of this expert and the actual testimony at trial would have created a reasonable likelihood of a different result, especially as the trial court found, in a bench trial, that the eyewitnesses were inconsistent on certain aspects of their testimony, but that such contradictions were to be expected under the circumstances of their case and did not undermine their credibility on the ultimate issue of petitioner's role in the killing of Mr. White.

## Summary of Case

The State charged petitioner with murder in the first degree and armed criminal action in the shooting death of Larry White. Respondent's Exhibit B, pages 7-8, 26-27, 39-40, 66-68, 204-06.

Petitioner was originally found guilty after a jury trial. Respondent's Exhibit B, pages 112-15. That verdict was set aside and a new trial granted. Respondent's Exhibit B, pages 146-47. Petitioner subsequently waived his right to a jury trial and proceeded to a bench trial. Respondent's Exhibit A, pages 3-9, Respondent's Exhibit B, page 201.

In October 2003, Lorraine Morrow made money by functioning as a middle person in drug sales. Respondent's Exhibit A, pages 107-08. One of

7

the people that she purchased drugs from during this time period was petitioner.  Respondent's Exhibit A, pages 107-08.

On October 6, Ms. Morrow was walking from one friend's house to another friend's house, when she encountered petitioner and Mr. White arguing about drugs.  Respondent's Exhibit A, pages 109-10.  In particular, Mr. White had been outside an apartment complex on 29th and Olive selling drugs to people who drove up, and petitioner accused Mr. White of invading petitioner's sales territory.  Respondent's Exhibit A, pages 113-14.

According to Ms. Morrow's trial testimony, petitioner went to get a gun, and then petitioner and another individual (later identified as Gary Kitchen), who also had a gun, began to chase Mr. White down the street.  Respondent's Exhibit A, pages 114-15, 122.  Ms. Morrow claimed that, during this chase, three shots were fired.  Respondent's Exhibit A, page 114.  The chase ended up at a restaurant parking lot a couple of blocks away.  Respondent's Exhibit A, pages 115, 118.

Ms. Morrow hid from the shooting, but after she thought that the shooting was done, she saw petitioner turn Mr. White over and fire additional shots at Mr. White.  Respondent's Exhibit A, pages 118-19.

Prior to October 2003, Felicia Jones had purchased crack cocaine from petitioner on several occasions.  Respondent's Exhibit A, page 161.

8

On October 6, 2003, Ms. Jones was in front of the apartment complex when she saw petitioner go to his car and get a gun.[2]  Respondent's Exhibit A, page 170.   Ms. Jones then saw petitioner at the corner of the house on Wabash shooting at Mr. White.  Respondent's Exhibit A, pages 171-72.

Wendy Lockett had also purchased drugs from petitioner prior to October 2003.  Respondent's Exhibit A, pages 185-86.  On October 6, Ms. Lockett was on the corner of Olive and 28th selling drugs.  Respondent's Exhibit A, page 188.  Ms. Lockett was standing next to Mr. White, but also saw Ms. Jones in the vicinity.   Respondent's Exhibit A, page 188.

Ms. Lockett heard petitioner telling Mr. White that Mr. White was not allowed to sell drugs at that location.  Respondent's Exhibit A, page 190.  Ms. Lockett then heard gunfire and took off running.  Respondent's Exhibit A, page 191.  Ms. Lockett did not see who fired the original shot.  Respondent's Exhibit A, page 192.

---

[2] By the time of trial, Ms. Jones claimed to not even remember making a statement to police.  Respondent's Exhibit A, page 167.  Her written statement was admitted as a prior inconsistent statement and is considered to be substantive evidence under Section 491.074, RSMo.  Respondent's Exhibit  A, page 168.

As she ran, Ms. Lockett caught sight of Mr. White also running, being chased by two individuals whom Ms. Lockett could not identify at the time. Respondent's Exhibit A, page 194. Ms. Lockett heard one of the two individuals say to Mr. White that he was going to die. Respondent's Exhibit A, page 194. The clothing of the two individuals resembled what petitioner had been wearing back at the apartment. Respondent's Exhibit A, page 194.

Shortly thereafter, Ms. Lockett saw Mr. White on the ground in the restaurant parking lot with another individual standing over him and shooting at Mr. White. Respondent's Exhibit A, page 195. When the shooter turned around, Ms. Lockett recognized petitioner. Respondent's Exhibit A, page 195.

When police were dispatched to the area, they found Mr. White lying face up in the restaurant parking lot. Respondent's Exhibit A, pages 42-44, 46, 52. Initially, officers only secured the parking lot as a crime scene, but later a second nearby location (the house at the corner of Wabash, approximately 230 yards away from the location of the body)) where shell casings had been found was also secured as a crime scene. Respondent's Exhibit A, pages 43, 47-48. While officers attempted to minimize the contamination of the crime scene at the parking lot, it was disturbed by ambulance personnel treating Mr. White. Respondent's Exhibit A, page 53.

When crime scene technicians arrived at the parking lot, they found some blood, clothing, and medical things. Respondent's Exhibit A, pages 65-66. The technicians only collected a coat and some gloves as potential evidence, but did not find any shell casings or spent bullets. Respondent's Exhibit A, page 66. The technicians then went to the second crime scene, a neighboring residence, were they collected the shell casings. Respondent's Exhibit A, pages 66-67. Some of the casings were found near the porch of the residence, but others were found along the street. Respondent's Exhibit A, page 67.

The following day, a search warrant was served at the apartment complex on 29th and Olive. Respondent's Exhibit A, pages 67-69. During that search, various types of ammunition, two ID cards, and a gun cleaning kit were found in one apartment, and a rifle (hidden inside a freezer), various types of ammunition, and $464 in cash were found in a second apartment. Respondent's Exhibit A, pages 69-71.

A week later, a search warrant was served at petitioner's house where, in addition to evidence potentially related to a narcotics operation, a rifle was found underneath one of the vehicles parked out front. Respondent's Exhibit A, pages 243-45.

The autopsy of Mr. White showed that he had one gunshot wound to the head and two to the chest. Respondent's Exhibit A, pages 306-07.

Additionally, there was a graze wound to Mr. White's left side. Respondent's Exhibit A, pages 306-07. The gunshot wound to the head went from the right rear to the left front and slightly upwards. Respondent's Exhibit A, pages 308-09. One of the two chest wounds entered slightly in the back on the right side and exited in the front near the midline, going slightly upwards, but stayed just below the skin, never entering the chest cavity. Respondent's Exhibit A, pages 309-10. The other chest wound also went from right to left and back to front, entering near the top of the abdomen. Respondent's Exhibit A, pages 310-11. While this gunshot did not directly hit anything significant, the force of the gunshot did some damage to the intestines requiring surgery. Respondent's Exhibit A, pages 310-11. The graze wound went in the opposite direction of the other three wounds – going front to back, left to right, and slightly downward. Respondent's Exhibit A, page 312.

Based on the nature of the wounds, the medical examiner concluded that the bullets were fired from a rifle or from a handgun that used high velocity projectiles. Respondent's Exhibit A, pages 314-15. There was no stippling, indicating that the gun was at least three feet away. Respondent's Exhibit A, pages 315-17.

The gunshot wound to the head was the ultimate cause of death. Respondent's Exhibit A, pages 322-24.

The shell casings found near the Wabash residence were consistent with being shot from the gun recovered at the apartment complex on Olive. Respondent's Exhibit A, pages 346-48.

When petitioner talked with the police, he denied being at the apartment complex. Respondent's Exhibit A, pages 432-33. However, his "alibi" witness, Vanessa Bell stated that she was with petitioner at the apartment complex while the shooting was taking place. Respondent's Exhibit A, pages 408-10.

## Actual Innocence

As part of his Ground One, petitioner appears to be asserting a claim of actual innocence. Document 1-2, pages 15-16; Document 1-3, pages 2-6, 25-26; Document 4.

Actual innocence is a ground that can excuse the failure to properly raise a claim of a constitutional violation in a timely fashion. *See Schlup v. Delo,* 513 U.S. 298, 314-15, 115 S. Ct. 851, 860-61 (1994). In *Schlup,* the United States Supreme Court, however, stated that one of the requirements for a valid claim of actual innocence was "new evidence." 513 U.S. at 316, 125 S. Ct. at 861. Actual innocence is not an independent claim. *Burton v. Dormire,* 295 F.3d 839, 848 (8th Cir. 2002). Instead a *Schlup* claim is merely a gateway permitting review of other claims. *Id.* at 846. Additionally, to be entitled to such a review, a petitioner must show that the new evidence

demonstrated that it was more likely than not that no reasonable juror would have convicted him in light of the new evidence.

Furthermore, in *Weeks v. Bowersox,* 119 F.3d 1342 (8th Cir. banc 1997), the Eighth Circuit held that claims of actual innocence must be supported with new evidence and that mere allegations of actual innocence in the pleadings unsupported by evidence (e.g. affidavits from the purported witnesses) were insufficient. *Id.* at 1351-53. As the Eighth Circuit noted in *Weeks,* allowing an inmate to invoke the actual innocence exception based solely on pleadings unsupported by evidence would effectively eliminate the limitations on that exception. *Id.* at 1353.

Contrary to petitioner's suggestions, he has not met adequately demonstrated that with his "new evidence" would result in no reasonable juror being able to convict. Petitioner's new evidence appears to consist of three claims: 1) that Ms. Lockett was the original confidential informant regarding this case; 2) that Thaddeus Wilson would testify that Ms. Lockett was not present at the scene; and 3) that Ms. Morrow has now recanted.

According to Ms. Lockett's trial testimony, she talked with the police a couple of days after the shooting. Respondent's Exhibit A, page 196. According to Ms. Lockett, she made a statement at that time, and only made the one statement. Respondent's Exhibit A, page 196.

The report from Ms. Lockett's formal statement indicates that she gave her statement on October 14. Document 1-2, page 36. However, petitioner asserts that the statement that Ms. Lockett is actually referring to in her trial testimony would have been the statement given by the confidential informant on October 7. Document 1-2, page 37.

However, even if Ms. Lockett was the original confidential informant, that evidence does not support a claim of actual innocence. While petitioner claims that, if trial counsel had known that Ms. Lockett was the original confidential informant, this information could have been used to cross-examine Ms. Lockett, the report itself includes no information which would show that petitioner was not one of the individuals mentioned in the report. Document 1-2, page 37. Additionally, the summary of the confidential informant's statement does not differ substantially from Ms. Lockett's testimony. As such, it does not tend to prove that petitioner is actually innocent. Furthermore, the basis for this claim was available in time to raise allegations related to the failure to disclose this fact during the post-conviction proceedings and thus, it should not be considered to be new evidence.

Assuming for the sake of argument that unverified letters purporting to be from Thaddeus Wilson would be adequate to raise a claim of actual innocence, those letters and the remaining pleadings substantially

15

undermine any claim that a jury would give any credibility to Mr. Wilson. In particular, Ms. Lockett made a statement to the police potentially incriminating Mr. Wilson – her nephew – in a crime. Document 1-2, pages 27-29. Given that Mr. Wilson was apparently incarcerated as a result of that investigation, he is not a credible witness in attacking his aunt's credibility.

Assuming for the sake of argument that petitioner has adequately supported his claim that Ms. Morrow has recanted, the recantation by one witness does not meet the level necessary to support a claim of actual innocence. Assuming that Ms. Morrow has now recanted, the remaining evidence from trial remains. In particular, both Ms. Jones and Ms. Lockett made statements that they saw petitioner chasing and shooting at Mr. White.

In this case, petitioner was charged with acting in concert with another to kill Mr. White. Respondent's Exhibit B, pages 204-06. As such, it is not necessary that petitioner was the person who actually fired the fatal shot, merely that he was involved in the shooting. Thus, even if this new evidence undermines the conclusion that petitioner fired the fatal shot, substantial evidence remained that he was involved in the shooting. There is no reasonable likelihood that, even with this new evidence, a reasonable jury would not return a verdict of guilty in light of the entirety of the evidence.

None of the new evidence actually demonstrates that petitioner is actually innocent. Instead, at best, it minimally undermines some of the

evidence against petitioner. Because the other evidence remains intact, petitioner fails to cross the high threshold required for a valid claim of actual innocence. As such, this Court should not consider reach any of petitioner's unpreserved claims in Ground One, Ground Two, and Ground Three.

## **Claims Raised**

I. GROUND ONE

    A.    Petitioner's Claim to this Court

Petitioner claims that there is "newly discovered evidence." Document 1, page 5; Document 1-2, pages 12-20. As best as respondent can determine, petitioner is attempting to raise a *Brady* claim asserting that the State failed to disclose a narrative report written by Officer Huth and Officer Begley regarding statements by a confidential informant, and two letters from Thaddeus Wilson. Document 1-2, page 13. Petitioner also appears to claim that Wendy Lockett was not a reliable witness, and that Ms. Lockett was the confidential informant discussed in the narrative (and thus that he would have been able to cross-examine Ms. Lockett with the "confidential informant statement" as well as her later statements). Document 1-2, pages 14-20.[3]

---

[3] Petitioner also claims that he is actually innocent in this Ground based on Mr. Wilson's letters and the alleged recantation by Ms. Morrow. However, as discussed above, actual innocence is not an independent ground for relief, but

B.     Petitioner's Claim in State Court

In his pro se post-conviction motion, petitioner raised a *"Brady"* claim as to the failure to disclose all of the crime scene photographs.  Respondent's Exhibit G, pages 33-34, 72-73.

In his amended post-conviction motion, petitioner claimed that appellate counsel was ineffective for failing to raise this claim on appeal. Respondent's Exhibit G, pages 104-05.

This claim was not included in the appeal from the denial of the post-conviction motion.  Respondent's Exhibit I.

C.     Failure to Properly Exhaust State Remedies/Default of State Remedies/State Procedural Bar

Before presenting a claim for review in a federal habeas petition, a petitioner must first properly exhaust state remedies.  28 U.S.C. 2254(b).  To properly exhaust state remedies, the claim raised in the petition must have fairly presented the "substance" of the claim to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6 (1982).  A claim is not fairly presented when factual allegations with a significant impact on the merits of the claim are raised for the first time in federal court.   *Stranghoener v. Black,* 720 F.2d 1005, 1007-

instead permits the raising of claims which would otherwise be procedurally barred.

09 (8th Cir. 1983). To be fairly presented, both the factual and legal basis for the claim must have been raised with the state courts. *Flieger v. Delo,* 16 F.3d 878, 885 (1996); *see also King v. Kemna,* 266 F.3d 816, 821 (8th Cir. banc 2001). Furthermore, for a claim to be fairly presented and for state remedies to be properly exhausted, a petitioner must have raised the claim on direct appeal or in state post-conviction proceedings. *Davis v. Campbell,* 608 F.2d 317, 320-21 (8th Cir. 1979).

Under Missouri law, claims not included in the amended motion for post-conviction relief are not considered to be before the motion court. *Wills v. State,* 321 S.W.3d 375, 386-87 (Mo. App. W.D. 2010); *Norville v. State,* 83 S.W.3d 112, 114 (Mo. App. S.D. 2002); *Leach v. State,* 14 S.W.3d 668, 670-71 (Mo. App. E.D. 2000). Furthermore, when appellate court review of a post-conviction motion is available, failure to include a claim made to the motion court in an appeal operates as a procedural bar to consideration of such a claim by the federal courts. *Flieger v. Delo,* 16 F.3d 878, 885 (1996); *see also Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006); *Osborne v. Purkett,* 411 F.3d 911, 919 (8th Cir. 2005); *Low-Bey v. Groose,* 28 F.3d 816, 818 (8th Cir. 1994).

When a petitioner has not properly exhausted state remedies on a claim and the time for doing so has expired, he has procedurally defaulted that claim. *Welch v. Lund,* 616 F.3d 756, 758 (8th Cir. 2010). If a petitioner has procedurally defaulted a claim, habeas review of that claim is not

permitted unless the petitioner can "cause and prejudice" excusing that procedural default.  *Id.* at 760.

In his petition, petitioner acknowledges that these items were discovered by an investigator for post-conviction counsel.  Document 1-2, pages 13-14.  Thus, the failure to include this claim in the post-conviction motion is a procedural bar.

While the failure of post-conviction counsel to include this claim could be cause if post-conviction counsel were ineffective, the facts alleged fail to demonstrate that post-conviction counsel was ineffective.  Based on the facts presented by petitioner, however, reasonable post-conviction counsel could conclude that there was not a viable *Brady* claim as Mr. Wilson did not indicate the date on which he and Ms. Lockett were picked up (and thus no basis to conclude that Ms. Lockett was the confidential informant) and there was nothing in the report of the statement of the confidential informant that would make that statement material in light of the other information available about Ms. Lockett.

Ground One should be dismissed.

D.    Evidence in State Court

At trial, Ms. Lockett testified that she had heard petitioner telling Mr. White that Mr. White was not allowed to sell drugs at that location. Respondent's Exhibit A, page 190.  Ms. Lockett then heard gunfire and took

off running. Respondent's Exhibit A, page 191. Ms. Lockett did not see who fired the original shot. Respondent's Exhibit A, page 192.

As she ran, Ms. Lockett caught sight of Mr. White also running, being chased by two individuals whom Ms. Lockett could not identify at the time. Respondent's Exhibit A, page 194. Ms. Lockett heard one of the two individuals say to Mr. White that he was going to die. Respondent's Exhibit A, page 194. The clothing of the two individuals resembled what petitioner had been wearing back at the apartment. Respondent's Exhibit A, page 194.

Shortly thereafter, Ms. Lockett saw Mr. White on the ground in the parking lot with another individual standing over him and shooting at Mr. White. Respondent's Exhibit A, page 195. When the shooter turned around, Ms. Lockett recognized petitioner. Respondent's Exhibit A, page 195.

Trial counsel cross-examined Ms. Lockett about differences in her trial testimony and her testimony at a previous trial. Respondent's Exhibit A, pages 207-11, 219-20.

The lead detective indicated that the information received during the search warrant ultimately led them to Ms. Lockett and Ms. Morrow, but that contact was not made with either until October 14. Respondent's Exhibit A, pages 261-63.

E.     Findings of State Courts

The motion court found that appellate counsel made a reasonable decision to limit the claims on appeal to the two strongest claims. Respondent's Exhibit G, page 173.

As this issue was not raised on the appeal from the denial of the post-conviction motion, there are no findings from the post-conviction appeal.

F.     Analysis of Claims

If this Court opts to review this claim on the merits, the facts as plead by petitioner fail to demonstrate a *Brady* violation.

While *Brady* can cover impeachment evidence, there is still the requirement that the information be material. *Strickler v. Greene,* 527 U.S. 263, 289-96 (1999).  In this case, Ms. Lockett had testified in the previous jury trial and in a deposition prior to her trial testimony.  Respondent's Exhibit A, pages 201-02.  Ms. Lockett was cross-examined about her prior testimony.  Respondent's Exhibit A, pages 207-11, 219-20.

At the present time, petitioner has no evidence that Ms. Lockett was the confidential informant, but rather speculates based on the memory of Thaddeus Wilson that he and Ms. Lockett were interviewed by the police on an unspecified date.  Document 1-2, page 34.  Nothing in the letters of Mr. Wilson reveals the date when he and Ms. Lockett were picked up by the

police, and, thus, nothing supports petitioner's belief that Ms. Lockett was the confidential informant.

Even if Ms. Lockett was the confidential informant, the report is a police summary of the information which the confidential informant provided. According to that summary, the confidential informant saw two men chasing Mr. White from 29th and Olive past the house on Wabash, firing guns at Mr. White. Document 1-2, page 37. This statement is generally consistent with the testimony of Ms. Lockett, and would not have impeached her trial testimony. That evidence would also have been consistent with the statement of Ms. Jones. As such, the failure to disclose that Ms. Lockett was the confidential informant, assuming for the sake of argument that she was, was not an exculpatory or material fact.

The letters from Mr. Wilson were written after petitioner's trial, and petitioner has made no suggestion that they were ever in the State's possession. As such, these letters could not be *Brady* material.

For the reasons that will be discussed in Ground Three, a claim that a witness is unreliable is not a basis for excluding their testimony.

Ground One should be denied.

II.    GROUND TWO

    A.    Petitioner's Claim to this Court

Petitioner claims that there was insufficient evidence of guilty because the testimony of the witnesses contradicted each other.  Document 1-4, pages 11-16.

    B.    Petitioner's Claim in State Court

On direct appeal, petitioner claimed that the evidence was insufficient to support a charge of murder in the first degree.  Respondent's Exhibit C, page 10.  In the argument section of the brief, petitioner specifically noted the lack of evidence of deliberation.  Respondent's Exhibit C, page 17.

In his pro se post conviction motion, petitioner claimed that appellate counsel was ineffective for only claiming that the evidence was insufficient on the issue of deliberation.  Respondent's Exhibit G, pages 24-30, 45-64.  This pro se claim was renewed as an attachment to the amended post-conviction motion.  Respondent's Exhibit G, pages 121-29.

This claim was not included in the appeal from the denial of the amended motion.  Respondent's Exhibit I.

    C.    Failure to Properly Exhaust State Remedies/Default of State Remedies/State Procedural Bar

Before presenting a claim for review in a federal habeas petition, a petitioner must first properly exhaust state remedies.  28 U.S.C. 2254(b).  To

properly exhaust state remedies, the claim raised in the petition must have fairly presented the "substance" of the claim to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6 (1982). A claim is not fairly presented when factual allegations with a significant impact on the merits of the claim are raised for the first time in federal court. *Stranghoener v. Black,* 720 F.2d 1005, 1007-09 (8th Cir. 1983). To be fairly presented, both the factual and legal basis for the claim must have been raised with the state courts. *Flieger v. Delo,* 16 F.3d 878, 885 (1996); *see also King v. Kemna,* 266 F.3d 816, 821 (8th Cir. banc 2001). Furthermore, for a claim to be fairly presented and for state remedies to be properly exhausted, a petitioner must have raised the claim on direct appeal or in state post-conviction proceedings. *Davis v. Campbell,* 608 F.2d 317, 320-21 (8th Cir. 1979).

Under Missouri law, claims not included in the amended motion for post-conviction relief are not considered to be before the motion court. *Wills v. State,* 321 S.W.3d 375, 386-87 (Mo. App. W.D. 2010); *Norville v. State,* 83 S.W.3d 112, 114 (Mo. App. S.D. 2002); *Leach v. State,* 14 S.W.3d 668, 670-71 (Mo. App. E.D. 2000). Furthermore, when appellate court review of a post-conviction motion is available, failure to include a claim made to the motion court in an appeal operates as a procedural bar to consideration of such a claim by the federal courts. *Flieger v. Delo,* 16 F.3d 878, 885 (1996); *see also*

*Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006); *Osborne v. Purkett,* 411 F.3d 911, 919 (8th Cir. 2005); *Low-Bey v. Groose,* 28 F.3d 816, 818 (8th Cir. 1994).

Furthermore, for claims of trial court error not raised on the direct appeal, as the United States Supreme Court recognized in *Edwards v. Carpenter,* 529 U.S. 446, 126 S. Ct. 1587 (1999), a habeas petitioner may not use ineffective assistance of counsel as "cause" justifying a failure to preserve an issue if the habeas petitioner failed to raise the claim of ineffective assistance of counsel in appropriate state court proceedings. 529 U.S. at 450-54, 126 S. Ct. at 1591-92; *see also Fields v. Roper,* 448 F.Supp.2d 1113, 1117 (ED Mo. 2006).

When a petitioner has not properly exhausted state remedies on a claim and the time for doing so has expired, he has procedurally defaulted that claim. *Welch v. Lund,* 616 F.3d 756, 758 (8th Cir. 2010). If a petitioner has procedurally defaulted a claim, habeas review of that claim is not permitted unless the petitioner can "cause and prejudice" excusing that procedural default. *Id.* at 760.

Petitioner's current claim expands the claim raised on direct appeal to an extent that it should not be considered to have been fairly presented in the state courts. While petitioner did include this claim in the amended post-conviction, he did not include it in the appeal from the denial of the amended post-conviction motion. Respondent's Exhibit I.

While ineffective assistance of motion counsel in not raising a claim can be cause for the failure to exhaust state remedies, ineffective assistance on the appeal of the denial of a post-conviction motion does not demonstrate cause excusing default of state proceedings. *Coleman v. Thompson,* 501 U.S. 722, 752-57 (1990).

Ground Two should be dismissed.

D.    Evidence in State Court

Ms. Morrow testified that she was near the apartment complex at 29th and Olive when petitioner and Mr. Kitchen began to chase after and shoot at Mr. White.  Respondent's Exhibit A, pages 114-15, 122.  According to Ms. Morrow, Ms. Lockett was across the street at the start of the incident. Respondent's Exhibit A, page 131.

Ms. Morrow generally followed the chase, while trying to hide from gunshots, but did see petitioner shoot Mr. White after turning him over on the parking lot.  Respondent's Exhibit A, pages 118-19.  According to Ms. Morrow, she heard/saw five shots after petitioner turned Mr. White over. Respondent's Exhibit A, pages 146-47.

Ms. Jones, in her statement to the police, indicated that she saw petitioner get a gun from his car.  Respondent's Exhibit A, page 170.  Ms. Jones also indicated that she saw petitioner shoot at Mr. White when

petitioner was standing on the porch of the house at Wabash.   Respondent's Exhibit A, pages 171-72.

Ms. Lockett heard petitioner telling Mr. White that Mr. White was not allowed to sell drugs at that location.  Respondent's Exhibit A, page 190.  Ms. Lockett then heard gunfire and took off running.  Respondent's Exhibit A, page 191.  Ms. Lockett did not see who fired the original shot.  Respondent's Exhibit A, page 192.

As she ran, Ms. Lockett caught sight of Mr. White also running, being chased by two individuals whom Ms. Lockett could not identify at the time.  Respondent's Exhibit A, page 194.  Ms. Lockett heard one of the two individuals say to Mr. White that he was going to die.  Respondent's Exhibit A, page 194.  The clothing of the two individuals resembled what petitioner had been wearing back at the apartment.  Respondent's Exhibit A, page 194.

Shortly thereafter, Ms. Lockett saw Mr. White on the ground in the parking lot with another individual standing over him and shooting at Mr. White.  Respondent's Exhibit A, page 195.  When the shooter turned around, Ms. Lockett recognized petitioner.  Respondent's Exhibit A, page 195.

In the post-conviction hearing, appellate counsel characterized her argument on sufficiency as a general argument about sufficiency rather than merely focusing on the issue of deliberation.  Respondent's Exhibit F, pages

10-11.  Appellate counsel did believe that she had selected the best issues for appeal.  Respondent's Exhibit F, pages 18-19.

E.     Findings of State Courts

The trial court noted that there were three witnesses who saw petitioner doing some of the shooting in this case.  Respondent's Exhibit A, page 481.  The trial court further found that the testimony of Ms. Bell as to petitioner's alibi was not credible.  Respondent's Exhibit A, pages 481-82.

Based on all of the evidence, the trial court concluded that Mr. White was shot while running and then collapsed in the parking lot.  Respondent's Exhibit A, page 485.  The trial court, however, believed, that the fatal shot took place in the parking lot after Mr. White had fallen.  Respondent's Exhibit A, pages 484-85.

While there were inconsistencies in the testimony, the trial court found that such inconsistencies and inaccuracies are not unusual in this type of situation.  Respondent's Exhibit A, pages 486-87.

On direct appeal, the Missouri Court of Appeals, Western District found that there was sufficient evidence of petitioner's actions in chasing Mr. White before shooting him to support a finding of deliberation.  Respondent's Exhibit E, pages 3-4.

The motion court found that appellate counsel made a reasonable decision to limit the claims on appeal to the two strongest claims. Respondent's Exhibit G, page 173.

As this issue was not raised on the post-conviction appeal, there are no findings from the post-conviction appeal.

F.  Standard of Review/Analysis of Claims

Under 28 U.S.C. Section 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts.

The standard for sufficiency of the evidence is set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781 (1978).  In *Jackson,* the United States Supreme Court (in a habeas case) stated that the due process clause required that evidence be sufficient to support guilt with the standard being whether, taking the evidence in the light most favorable to the State, a reasonable finder of fact could determine that the defendant was guilty.  443 U.S. at 318-20, 325-26, 99 S. Ct. at 2788-90, 2792-93.  However, *Jackson* noted that the elements of the offense are a matter of state law.  443 U.S. at 324 n. 16, 99 S. Ct. at 2792 n. 16.  As discussed by the Supreme Court in *McDaniel v. Brown,* 130 S. Ct. 665 (2009), the *Jackson* standard requires that, when faced with conflicting evidence, the reviewing court must assume that the trier of fact

resolved those issues in favor of the prosecution and defer to that resolution. 130 S. Ct. at 673. While, in this case, the state court did not directly cite to *Jackson,* the standard that it gave substantially tracks with the standard set forth in *Jackson.* As such, the issue is whether the state courts unreasonably applied the standard set forth in *Jackson* or unreasonably determined the facts.

Petitioner's argument essentially ignores the *Jackson* standard and asks this Court to re-determine the credibility of the witnesses. However, under *Jackson,* this Court is not free to function as a super-juror and disregard the implicit credibility findings of the trial court.

Even if this Court did accept petitioner's invitation to ignore the testimony of Ms. Lockett and Ms. Morrow, there was still sufficient evidence of petitioner's guilt. Petitioner was charged with acting in concert with others to kill Mr. White, and, as detailed below, the evidence of petitioner's actions prior to Mr. White arriving on the parking lot are sufficient to show that petitioner acted in concert with others to kill Mr. White. Respondent's Exhibit B, pages 204-06.

Ms. Morrow, Ms Jones, Ms. Lockett, and Ms. Bell all testified or gave statements that petitioner was at the apartment complex at the time that the shooting started. Respondent's Exhibit A, pages 110-13, 170, 190, 409-10. Ms. Morrow, Ms. Jones, Ms. Lockett, and Ms. Bell all testified or gave

statements that petitioner sold controlled substances with Ms. Morrow and Ms. Bell testifying that some of the sales took place at the apartment complex. Respondent's Exhibit A, page 113, 161-62, 185-86, 417. Ms. Morrow and Ms. Jones testified or gave statements that petitioner retrieved a gun and began to chase after Mr. White. Respondent's Exhibit A, pages 114-15, 170. Ms. Morrow, Ms. Jones, and Ms. Lockett all testified or gave statements that a second individual was also involved in chasing Mr. White. Respondent's Exhibit A, pages 114-16, 171-72, 194, 226-27, 231. Ms. Jones gave a statement that petitioner was the person who was firing the gun from the Wabash residence. Respondent's Exhibit A, pages 171-72. Both Ms. Morrow and Ms. Jones testified or gave statements that petitioner shot at Mr. White as Mr. White was fleeing. Respondent's Exhibit A, pages 118, 171-72.

In a search of the apartment complex, the gun used to shoot from the area of the residence of Wabash was found intermingled with items related to narcotics distribution. Respondent's Exhibit A, pages 66-72, 346-47.

Based on the statements from Ms. Jones (with or without the testimony from Ms. Lockett and Ms. Morrow), a rational finder of fact could conclude that petitioner was involved in chasing and shooting at Mr. White. Because petitioner was charged with acting in concert with his unknown accomplice (potentially Mr. Kitchen), it is irrelevant under Missouri law whether the

fatal shot was fired by petitioner or by his accomplice. The sole issue for the court to decide was whether it was a reasonable inference from the evidence that petitioner or his partner were the people who killed Mr. White. While petitioner and his evidence might suggest that Ms. Lockett and Ms. Morrow were wrong about petitioner shooting Mr. White as he lay on the ground in the parking lot, all that does is move the fatal shot back to the chase. As the evidence, taken in the light most favorable to the verdict, demonstrates that petitioner was a full participant in the chase and the shooting during the chase, the evidence was sufficient to support the charges against petitioner.

Additionally, to the extent that this claim is viewed as an allegation of ineffective assistance of appellate counsel, competent appellate counsel is expected to strategically winnow down claims to a few major points. *Jones v. Barnes,* 463 U.S. 745, 750-51 (1983). There is no requirement that counsel raise all colorable claims, and courts should be hesitant to second-guess the decision of appellate counsel as to which claims should be raised. *Id.* at 754. For the reasons noted above, a claim that there was insufficient evidence to prove that petitioner was, at the very least, an accomplice in the shooting of Mr. White would not have succeeded on direct appeal. As such, appellate counsel was not incompetent for forgoing this claim, and petitioner was not prejudiced by the absence of this claim from his direct appeal.

Ground Two should be denied.

III.  GROUND THREE

A.  Petitioner's Claim to this Court

Petitioner claims that the conviction should not be allowed to stand because it is based on false testimony.  Document 1-5, page 6.  Petitioner then appears to argue that the testimony was false because the identification testimony from Ms. Lockett and Ms. Morrow was unreliable, and their description of the shooting was contrary to the testimony of other witnesses. Document 1-5, pages 4-12.

B.  Petitioner's Claim in State Court

In his pro se post-conviction motion, petitioner claimed that appellate counsel was ineffective for not briefing a claim that the trial court should have excluded the testimony of Ms. Lockett.  Respondent's Exhibit G, pages 76-77, 80-86.

In his amended post-conviction motion, petitioner claims that trial counsel was ineffective for failing to move to exclude the testimony of Ms. Morrow and Ms. Lockett because they were unreliable.  Respondent's Exhibit G, page 102, 111-12.  Petitioner also claimed that appellate counsel was ineffective for not briefing a claim that the trial court should have excluded the testimony of Ms. Lockett.  Respondent's Exhibit G, page 105.

This claim was not included in the appeal from the denial of the amended motion.  Respondent's Exhibit I.

C.     Failure to Properly Exhaust State Remedies/Default of State
Remedies/State Procedural Bar

Before presenting a claim for review in a federal habeas petition, a
petitioner must first properly exhaust state remedies. 28 U.S.C. 2254(b).  To
properly exhaust state remedies, the claim raised in the petition must have
fairly presented the "substance" of the claim to the state courts. *Anderson v.
Harless,* 459 U.S. 4, 6 (1982).  A claim is not fairly presented when factual
allegations with a significant impact on the merits of the claim are raised for
the first time in federal court.  *Stranghoener v. Black,* 720 F.2d 1005, 1007-
09 (8th Cir. 1983).   To be fairly presented, both the factual and legal basis for
the claim must have been raised with the state courts. *Flieger v. Delo,* 16
F.3d 878, 885 (1996); *see also King v. Kemna,* 266 F.3d 816, 821 (8th Cir. banc
2001).  Furthermore, for a claim to be fairly presented and for state remedies
to be properly exhausted, a petitioner must have raised the claim on direct
appeal or in state post-conviction proceedings.  *Davis v. Campbell,* 608 F.2d
317, 320-21 (8th Cir. 1979).

Under Missouri law, claims not included in the amended motion for
post-conviction relief are not considered to be before the motion court.  *Wills
v. State,* 321 S.W.3d 375, 386-87 (Mo. App. W.D. 2010); *Norville v. State,* 83
S.W.3d 112, 114 (Mo. App. S.D. 2002); *Leach v. State,* 14 S.W.3d 668, 670-71
(Mo. App. E.D. 2000).  Furthermore, when appellate court review of a post-

conviction motion is available, failure to include a claim made to the motion court in an appeal operates as a procedural bar to consideration of such a claim by the federal courts. *Flieger v. Delo,* 16 F.3d 878, 885 (1996); *see also Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006); *Osborne v. Purkett,* 411 F.3d 911, 919 (8th Cir. 2005); *Low-Bey v. Groose,* 28 F.3d 816, 818 (8th Cir. 1994).

Furthermore, for claims of trial court error not raised on the direct appeal, as the United States Supreme Court recognized in *Edwards v. Carpenter,* 529 U.S. 446, 126 S. Ct. 1587 (1999), a habeas petitioner may not use ineffective assistance of counsel as "cause" justifying a failure to preserve an issue if the habeas petitioner failed to raise the claim of ineffective assistance of counsel in appropriate state court proceedings. 529 U.S. at 450-54, 126 S. Ct. at 1591-92; *see also Fields v. Roper,* 448 F.Supp.2d 1113, 1117 (ED Mo. 2006).

When a petitioner has not properly exhausted state remedies on a claim and the time for doing so has expired, he has procedurally defaulted that claim. *Welch v. Lund,* 616 F.3d 756, 758 (8th Cir. 2010). If a petitioner has procedurally defaulted a claim, habeas review of that claim is not permitted unless the petitioner can "cause and prejudice" excusing that procedural default. *Id.* at 760.

While petitioner did include this claim in the amended post-conviction, he did not include it in the appeal from the denial of the amended post-

conviction motion. Respondent's Exhibit I. Ineffective assistance of motion counsel in not raising a claim can be cause for the failure to exhaust state remedies, but ineffective assistance on the appeal of the denial of a post-conviction motion does not demonstrate cause excusing default of state proceedings. *Coleman v. Thompson,* 501 U.S. 722, 752-57 (1990). As such, petitioner may not claim cause for the failure to include this claim on the appeal from the denial of his amended post-conviction motion.

Ground Three should be dismissed.

D.    Evidence in State Court

In her trial testimony, Ms. Morrow indicated that she was near the apartment complex at 29th and Olive when petitioner and began to chase after and shoot at Mr. White. Respondent's Exhibit A, pages 114-15, 122. According to Ms. Morrow, Ms. Lockett was across the street at the start of the incident. Respondent's Exhibit A, page 131.

Ms. Morrow generally followed the chase, while trying to hide from gunshots, but did see petitioner shoot Mr. White after turning him over on the parking lot. Respondent' s Exhibit A, pages 118-19. According to Ms.

Morrow, she heard/saw five shots after petitioner turned Mr. White over. Respondent's Exhibit A, pages 146-47.[4]

Ms. Jones, in her statement to the police, indicated that she saw petitioner get a gun from his car. Respondent's Exhibit A, page 170. Ms. Jones also indicated that she saw petitioner shoot at Mr. White when petitioner was standing on the porch of the house at Wabash. Respondent's Exhibit A, pages 171-72.

Ms. Lockett heard petitioner telling Mr. White that Mr. White was not allowed to sell drugs at that location. Respondent's Exhibit A, page 190. Ms. Lockett then heard gunfire and took off running. Respondent's Exhibit A, page 191. Ms. Lockett did not see who fired the original shot. Respondent's Exhibit A, page 192.

As she ran, Ms. Lockett caught sight of Mr. White also running, being chased by two individuals whom Ms. Lockett could not identify at the time. Respondent's Exhibit A, page 194. Ms. Lockett heard one of the two

---

[4] There was some confusion during Ms. Morrow's cross-examination when petitioner's trial counsel was asking about the casings found on the porch as to whether the questions concerned the porch of the apartment complex or the porch of a house that was on the path of the chase. Respondent's Exhibit A, pages 147-52.

individuals say to Mr. White that he was going to die. Respondent's Exhibit A, page 194. The clothing of the two individuals resembled what petitioner had been wearing back at the apartment. Respondent's Exhibit A, page 194.

Shortly thereafter, Ms. Lockett saw Mr. White on the ground in the parking lot with another individual standing over him and shooting at Mr. White. Respondent's Exhibit A, page 195. When the shooter turned around, Ms. Lockett recognized petitioner. Respondent's Exhibit A, page 195.

At trial, Marva Gray, who worked at the restaurant, testified that the gunshots did not come from the parking lot, but rather came from down the street. Respondent's Exhibit A, pages 375-79. However, Ms. Gray did acknowledge that she heard two separate sets of gunshots, separated by several minutes. Respondent's Exhibit A, pages 381-82.

At trial, Vernetta Bell testified that she was present for the incident but that Ms. Morrow and Ms. Lockett were not. Respondent's Exhibit A, pages 407-08. Ms. Bell claimed that petitioner was still at the apartment complex while the shooting was taking place down the street. Respondent's Exhibit A, pages 408-10.

Appellate counsel did believe that she had selected the best issues for appeal. Respondent's Exhibit F, pages 18-19.

Trial counsel explained that he did not file a motion to exclude the testimony of Ms. Lockett and Ms. Morrow because there was no legal basis to exclude their testimony. Respondent's Exhibit F, pages 80-83.

E.     Findings of State Courts

The trial court found that there were some inconsistencies in the testimony of the witnesses. Respondent's Exhibit A, pages 485-86. However, the trial court concluded that such inconsistencies were not uncommon for eyewitnesses given the circumstances of this homicide. Respondent's Exhibit A, pages 485-86.

The motion court found that the alleged unreliability of these witnesses would not have been a basis for the exclusion of the testimony of Ms. Morrow and Ms. Lockett, and thus counsel was not ineffective for not filing a motion to exclude this testimony. Respondent's Exhibit G, pages 171-72.

The motion court further found that appellate counsel was not ineffective for failing to include this claim on appeal. Respondent's Exhibit G, page 173.

As this issue was not raised on the appeal from the denial of the post-conviction motion, there are no findings from the post-conviction appeal.

F.     Standard of Review/Analysis of Claims

Under 28 U.S.C. Section 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable

application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts.

The existence of contradictions between the testimony of different witnesses (or between trial testimony and prior statements) is not sufficient to show that the trial testimony is perjured. *U.S. v. Peterson,* 223 F.3d 756, 763 (8th Cir. 2000); *United States v. Jordan,* 150 F.3d 895, 900 (8th Cir. 1998).

Furthermore, petitioner's claim that Ms. Morrow and Ms. Lockett should have been excluded as unreliable is based on case law on the specific issue of identification testimony. However, as the United States Supreme Court has recently made clear, the "reliability" prong of the test for the admission of identification testimony is inapplicable unless a defendant first shows the existence of state action rendering the identification procedures suggestive. *Perry v. New Hampshire,* 132 S. Ct. 716, 720-21 (2012).

As *Perry* makes clear, the normal rule is that questions about the reliability and truthfulness of a witness are the subject of cross-examination, not a basis for the exclusion of the witness from testifying. As petitioner makes no allegations showing that the identification procedures in this case were improper or that the prosecution knowingly used perjured testimony, he has failed to state a valid claim for relief.

Additionally, to the extent that this claim is viewed as an allegation of ineffective assistance of appellate counsel, competent appellate counsel is

expected to strategically winnow down claims to a few major points. *Jones v. Barnes,* 463 U.S. 745, 750-51 (1983). There is no requirement that counsel raise all colorable claims, and courts should be hesitant to second-guess the decision of appellate counsel as to which claims should be raised. *Id.* at 754. For the reasons noted above, there was no legal basis to claim that the trial court should have excluded the testimony of Ms. Lockett and Ms. Morrow, and any such claim would not have succeeded on direct appeal. As such, appellate counsel was not incompetent for forgoing this claim, and petitioner was not prejudiced by the absence of this claim from his direct appeal.

Ground Three should be denied.

## IV.  GROUND FOUR

### A.  Petitioner's Claim to this Court

Petitioner claims that trial counsel was ineffective for failing to obtain an independent forensic expert. Document 1-5, pages 26-30. Apparently, the purpose of the expert would be to testify regarding the circumstances of the shooting.

### B.  Petitioner's Claim in State Court

In his pro se post-conviction motion, petitioner claimed that trial counsel should have called a forensic science consultant to do a crime scene reconstruction. Respondent's Exhibit G, pages 13-21.

In his amended post-conviction motion, petitioner claimed that trial counsel was ineffective for failing to retain and call a forensic expert to conduct an analysis of the evidence recovered at the crime scene and compare it to the testimony given by the witnesses. Respondent's Exhibit G, pages 97-100, 107-09.

This claim was included in the appeal from the denial of the amended motion. Respondent's Exhibit I.

C.    Proper Exhaustion of State Remedies

This claim appears to track the claim raised in state court, and thus is properly exhausted.

D.    Evidence in State Court

At the time that he waived his right to a jury trial, petitioner noted that many of the State's experts at the previous trial provided testimony that contradicted what the eyewitnesses claimed had happened. Respondent's Exhibit A, pages 7-8.

During the cross-examination of the crime scene technician, it was brought out that the technician did not find any blood trails at either crime scene, and that paperwork found at the apartments reflected the name of Gary Kitchen. Respondent's Exhibit A, pages 97-99.

During the cross-examination of Ms. Lockett, trial counsel asked Ms. Lockett about the gun which was used by petitioner, and Ms. Lockett stated

that it looked like a pistol instead of a rifle. Respondent's Exhibit A, pages 231-33.

The lead detective at the parking lot indicated that it was not surprising that no shell casings were found at the parking lot as it is typical that a crime scene in an area with high traffic might get altered before the police can secure it. Respondent's Exhibit A, pages 256-57.

The medical examiner testified at trial as to the nature of the wounds – indicating that some came from the rear and were heading slightly upward, but that one came from the front. Respondent's Exhibit A, pages 308-14. The medical examiner further testified, that based on the lack of stippling, the gun was at least three feet away from Mr. White when it was fired. Respondent's Exhibit A, pages 315-17.

On cross-examination, the medical expert testified that he could not make any conclusions about the actual positions of the shooter and the victim because it is possible for the trajectories to occur even if the shooter is standing up and the victim is lying down depending upon how the victim is lying down. Respondent's Exhibit A, pages 329-40. However, the wounds were not consistent with somebody standing directly over the body, but it was possible. Respondent's Exhibit A, pages 329-42.

Trial counsel explained that the reason that he did not hire an expert to evaluate the forensic evidence from the restaurant parking lot was that the

crime scene had been contaminated, making it difficult to draw any conclusions about the physical evidence. Respondent's Exhibit F, page 70, 75-76. After petitioner had hired an expert on his own (post-trial), trial counsel did talk with the expert, but did not believe that the expert gave any additional admissible evidence beyond what had already been presented at trial. Respondent's Exhibit F, pages 72-73.

Petitioner presented evidence from Gary Rini, a forensic consultant. Mr. Rini testified that he could not make any determination from blood spatter evidence because the blood stains had been contaminated before any photographs were taken. Respondent's Exhibit H, page 13. Based on the nature of the wounds and the lack of cartridges at the parking lot, Mr. Rini concluded that Mr. White had not been shot by a person standing over him. Respondent's Exhibit H, pages 15-16. Mr. Rini, however, acknowledged that activity in the area could cause the cartridges to be moved. Respondent's Exhibit H, pages 28-29.

E. Findings of State Courts

The motion court found that trial counsel's decisions not to call a forensic expert was a reasonable trial strategy. Respondent's Exhibit G, page 170.

The Missouri Court of Appeals found that trial counsel was not ineffective in that counsel had strategic reasons for not calling Mr. Rini as an

expert (as his report only considered some of the evidence) and that any evidence which such an expert would have offered would have been cumulative to other evidence. Respondent's Exhibit K, page 8.

F.     Standard of Review/Analysis of Claims

Under 28 U.S.C. Section 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts.

In this case, the state courts properly cited to the standard for an ineffective assistance of counsel claim. Respondent's Exhibit G, pages 167-68, Respondent's Exhibit K, page 7. That leaves the issue of whether the state courts unreasonably determined the facts.

Counsel is not ineffective for opting not to call a witness or to conduct further investigation if such a decision is a reasonable decision made after a reasonable investigation. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1406-07 (2011).

In the present case, the evidence was clear that there were substantial problems with the integrity of the crime scene at the parking lot as was acknowledged by the state's witnesses. Given that the state's witnesses were going to acknowledge a lack of physical evidence from the parking lot to corroborate the testimony of Ms. Morrow and Ms. Lockett, a reasonable trial

attorney could conclude that it was not necessary to contact an outside expert who was not familiar with the area to testify to the lack of physical evidence was a reasonable determination.

Likewise, it was clear, and the medical examiner testified, that the nature of the wounds did not corroborate the testimony of Ms. Morrow and Ms. Lockett. Respondent's Exhibit A, pages 329-42. Trial counsel was not unreasonable in determining that it was not necessary to engage a defense expert merely to have a defense witness be slightly more certain than the medical examiner, especially as such additional certainty would not necessarily be credible.

As petitioner himself acknowledged prior to trial, petitioner believed that trial counsel in the first trial had developed facts from the police officers and medical examiner that contradicted the testimony of Ms. Morrow and Ms. Lockett. Respondent's Exhibit A, pages 7-8. Under these circumstances, in which the State's witnesses would be providing the desired evidence, competent trial counsel could make the decision that it was not necessary to hire an expert for the sole purpose of being slightly more emphatic than the State's witnesses.[5]

_____

[5] A reasonable attorney could conclude that a reluctant concession of a pro-defense fact in cross-examination from a State's witness would be more

Additionally, there is no reasonable likelihood that such an expert would have made a difference. The value of the expert was in showing that the witnesses were mistaken about certain facts, and, thus, could be mistaken about other facts. However, the trial court, in its finding of guilt, readily acknowledged the problems that the forensic consultant would have discussed, but concluded that such errors were of the type to be expected from eyewitnesses under these circumstances. Respondent's Exhibit A, pages 485-86.

Given that the testimony of the forensic consultant in his deposition was substantially similar to other evidence presented at trial, the state courts were not unreasonably in finding that petitioner had failed to prove prejudice.

Ground Four should be denied.

---

credible than a statement from an expert paid by the defendant to find such a fact, especially if the defense expert was more certain than the facts actually supported.

## Conclusion

WHEREFORE, for the reasons herein stated, respondent prays that the Court dismiss the petition without further judicial proceedings.

Respectfully submitted,

CHRIS KOSTER
Attorney General

\s\ Terrence M. Messonnier
TERRENCE M. MESSONNIER
Assistant Attorney General
Missouri Bar No. 42998

P. O. Box 899
Jefferson City, MO  65102
(573) 751-3321
(573) 751-3825 fax
Direct Phone (816) 889-5031
Terrence.messonnier@ago.mo.gov
Attorneys for Respondent

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document postage prepaid, this 18 day of June, 2012, to:

Keith Carnes
Inmate Number 161267
Crossroads Correctional Center
1115 East Pence Road
Cameron, Missouri 64429

/s/ Terrence M. Messonnier
Terrence M. Messonnier
Assistant Attorney General