# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KEITH L. CARNES, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 12-0416-CV-W-BP-P ) |
| LARRY DENNEY, | ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, DENYING PETITIONER'S MOTION FOR SUBPOENAS AND REQUEST FOR DISCOVERY, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Keith L. Carnes, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 30, 2012, seeking to challenge his 2005 convictions and 2006 sentences for first degree murder and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

The petition raises four grounds for relief: (1)"newly discovered information;" (2) that evidence at trial was insufficient to support a conviction; (3) that the trial court erred in admitting the eyewitness testimony of Wendy Lockett and Lorianne Morrow; and (4) that trial counsel was ineffective for failing to investigate, consult, retain, and call an independent forensic expert to testify at trial. Respondent contends that all grounds are either procedurally defaulted or without merit.

## SUMMARY OF THE FACTS

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 Motion, the Missouri Court of Appeals summarized the facts as follows:

> On October 6, 2003, the victim, Larry White, was selling crack cocaine on the corner of 29th and Olive in Kansas City. [Petitioner] was sitting on the balcony of an apartment across the street.

[Petitioner] sold crack cocaine from that apartment. [Petitioner] shouted to the victim that he was on [petitioner's] territory and could not sell drugs in the area. [Petitioner] then produced a gun and began to chase the victim, shooting at him as he ran away. Two witnesses who knew [petitioner], Lorianne Morrow and Wendy Lockett, saw him chasing and shooting at the victim. They saw [petitioner] eventually catch up to the victim in the parking lot of Fish Town restaurant and shoot him several times as he lay on the ground. Ms. Lockett heard [petitioner] say, "Die motherfucker, you're going to die."

The victim suffered three gunshot wounds, two to the chest and one to the head. He also suffered a graze wound to his side. When authorities discovered the victim in the parking lot of the Fish Town restaurant, he was lying on his back, face up. Dr. Thomas Gill, the deputy medical examiner for Jackson County, testified that the two wounds to the victim's chest indicated that the bullets had traveled from the back to the front of the body before exiting. The following exchange then took place on cross-examination between Dr. Gill and defense counsel:

> Q: Okay. So would it be fair to say that it appeared that the person, the victim here– these wounds would not have come if he were facing his shooter?
>
> A: That's correct.
>
> Q: Okay. And that would be both of these wounds, [the wounds to the chest], correct?
>
> A: Correct.
>
> Q: And also the graze wound?
>
> A: Yes.
>
> Q: All right. Now, if a person is laying on the ground and faceup [sic], would you expect to find [the chest wounds] if they were shot while they were laying on the ground faceup?
>
> A: Those would be very awkward. I mean, I suppose it's physically– well, with a long-

>>barreled weapon, it would be very, very awkward....
>
> Q: So those wounds would be inconsistent with–
>
> A: A person laying faceup. That's what we're talking about?
>
> Q: Right.
>
> A: Okay. Good.
>
> Q: So, Dr. Gill, based upon your experience and within a reasonable degree of medical certainty, would you conclude that [the chest wounds] and the graze wound did not come from shots from someone standing directly over the body?
>
> A: Directly over the body?
>
> Q: Yes.
>
> A: Yes.

The medical examiner further testified that the gunshot wound to the victim's head, which resulted in his death, entered above his right ear and passed from the back to the front of the skull before exiting. He stated on cross-examination that it was "possible" that such a wound was inconsistent with someone being shot while lying face up, on his back. He concluded, "I don't think there's any evidence one way or the other. I think it's kind of an open question. There is no evidence that the person was standing over them, but it's possible."

Officer Shawn Campbell testified that he investigated the crime scene at Fish Town restaurant, and, after seeing the scene, did not discover any shell casings in the area. Gregory Van Ryn, a crime scene technician, testified that after canvassing the parking lot of the Fish Town restaurant, he found a small pool of blood but no shell casings or spent bullets. He further testified that he found eleven shell casings at 2846 Wabash and another shell casing at the corner of 29th and Wabash.

Aletha Shepard-Bowen, the resident of 2846 Wabash, testified that

-3-

on the night of the shooting, she heard shots fired from 29th Street, to the side of her house. She later heard several more shots "further up the street back towards Prospect." After the shooting ceased, Ms. Shepard-Bowen went outside to investigate and found five shells on her front porch. She later gave them to a police officer.

[Petitioner] waived a jury trial, and the trial court convicted him of first-degree murder and armed criminal action and sentenced him to concurrent terms of life imprisonment without the possibility of parole and life imprisonment, respectively. This court affirmed the convictions and sentences on direct appeal. *State v. Carnes*, 241 S.W.3d 344 (Mo. App. W.D. 2007).

Thereafter, [petitioner] filed a *pro se* Rule 29.15 motion for postconviction [sic] relief. Appointed counsel filed an amended motion on [petitioner's] behalf. The motion alleged, in pertinent part, that defense counsel was ineffective in misleading [petitioner] to believe that there was no such expert as a forensic or crime scene reconstructionist and failing to retain and call such expert to testify at trial. It further alleged that after [petitioner's] conviction, [petitioner's] family located a forensic reconstructionist, Gary Rini, and retained him to analyze the State's evidence.

At the evidentiary hearing, [petitioner] testified that before trial, he asked defense counsel to retain a reconstruction expert because he believed that witnesses' statements were inconsistent with the physical evidence. Specifically, [petitioner] was concerned because the witnesses indicated that [petitioner] shot the victim at close range while standing over him in the Fish Town parking lot but nothing in discovery indicated that any bullets were retrieved from the parking lot and there was no physical evidence that a shooting took place there. [Petitioner] further testified that when he asked about a forensic reconstructionist, defense counsel "play[ed] like he doesn't know what I'm talking about like there's no such thing."

Defense counsel also testified at the hearing. He stated that the defense at trial was that the physical evidence did not support the eyewitness testimony and that he attempted to establish such defense through cross-examination of the State's witnesses. He also explained that when [petitioner] first mentioned the idea of a reconstruction expert, he responded that the crime scene had been contaminated, that nobody had cordoned off the crime scene, and so "it would be difficult to find somebody who could reconstruct the crime scene." Counsel further testified that he did not have any

-4-

contact with Mr. Rini until after the trial and that he eventually received a report from him concluding that, based on the pictures of the crime scene and the autopsy report, the testimony of the eyewitnesses was inconsistent with the physical evidence. Counsel continued:

> But there's a problem with that because Mr. Rini had never actually come out to Kansas City to observe the actual crime scene, and he was basing it just on pictures that had been sent to him. I discussed this with him a couple of times about how if he did testify, it would only be cumulative to what we were already doing and that I didn't know whether they would sustain the objection of it just being an opinion.

Counsel also testified that he was concerned that Mr. Rini had not conducted any analysis of the other crime scene where the shell casings were found:

> There's also the fact that on the corner of 29th and Wabash, there was a house with a fence there, and there were shell casings found there on the porch and in the yard of that house. There was shell casings found there. Okay.
>
> And there was a witness [Ms. Shepard-Bowen], the lady who lived in that house, who came to court to testify that she heard shooting from– in her yard and she actually called the police to point out to them where certain shell casings were located in her front yard and on her porch. That would have been consistent with the testimony of both Ms. Morrow and Ms. Lockett that the first shots had occurred on that corner area.
>
> So you got two different crime scenes. Mr. Rini was only testifying about the scene at the Fish Town. He had no testimony about the original crime scene down at the house. So, you know, a matter of trial strategy I decided, well, if you call this guy, he's only going to be able to testify about part of it anyway.

Defense counsel ultimately testified that even if he had possessed Mr. Rini's report before trial, he would not have called him to testify

-5-

> because his testimony would have been cumulative "and plus he would only be addressing that one area and not everything. So I would think the prosecutor would tear him apart saying you– you've not dealt with these other two locations."
>
> The parties stipulated to the admission of Mr. Rini's deposition at the evidentiary hearing. In it, Mr. Rini testified that he reviewed the police reports, autopsy report, and photographs in the case. He was asked to look at photographs of the crime scene to determine whether blood stain patterns were consistent with someone being shot at close range but could not make such determination because the stains were already covered with "blue absorbent chux," which contaminated them. Mr. Rini further testified that he examined the autopsy report and the description of the victim's gunshot wounds to determine whether the victim could have been shot by someone standing over him while he was lying on the ground. He concluded that based on the absence of bullets or shell casings in the parking lot and the angle of the bullet wounds on the victim's body, the physical evidence did not support the conclusion that the victim was shot while lying in the parking lot.
>
> Following the evidentiary hearing, the motion court denied [petitioner's] motion.

(Respondent's Exhibit K, pp. 2-6).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Case 4:12-cv-00416-BP   Document 17   Filed 07/31/12   Page 6 of 13

establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUNDS 1 & 3 - PROCEDURAL DEFAULT**

In ground 1, petitioner contends that the prosecutor committed a Brady[2] violation by not disclosing a "report form narrative" that was made by police officers the day after the crime. He also contends that "newly discovered evidence" is sufficient to identify witness Wendy Lockett as the confidential informant and to challenge her credibility as a witness. In ground 3, petitioner contends that the trial court erred in admitting the eyewitness testimony of Wendy Lockett and Lorianne Morrow. Respondent correctly contends that grounds 1 and 3 are procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the possibility of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

The record reveals that petitioner raised a different Brady claim[3] than the one set forth in ground 1 as well as the claim set forth in ground 3 in his original Rule 29.15 pro se motion, but he

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

[3] Petitioner previously has not raised a Brady claim regarding the "report form narrative" or any other document referenced in his Section 2254 petition.

-7-

did not raise the claims in his appeal from the denial of that motion. It is apparent, therefore, that grounds 1 and 3 are procedurally defaulted.

Because petitioner's grounds are procedurally defaulted, they may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not give any explanation for why he did not raise grounds 1 and 3 in state court and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence... that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Although petitioner describes his speculative theory in detail, he fails to make this showing.

Petitioner has failed to show cause for his default of grounds 1 and 3. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 1 and 3 is barred.

Grounds 1 and 3 are denied.

-8-

Case 4:12-cv-00416-BP   Document 17   Filed 07/31/12   Page 8 of 13

## **GROUND 2**

In ground 2, petitioner contends that evidence at trial was insufficient to support a conviction. Review of this claim is extremely deferential to the state courts. Constitutionally sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

On direct appeal, the Missouri Court of Appeals disposed of petitioner's claim as follows:

> Our review is limited to determining whether the verdict is supported by evidence from which reasonable jurors, or in this case, the trial judge, could find [petitioner] guilty of first degree murder. *State v. Blewett*, 853 S.W.2d 455, 458 (Mo. App. W.D. 1993). *See also State v. Johnson*, 81 S.W.3d 212, 215 (Mo. App. S.D. 2002) (applying the same standard in a court-tried criminal case). In this case, [petitioner] claims that there is not sufficient evidence to show that he killed White after deliberation. We disagree. [Petitioner] had to jump or climb off a balcony to chase White after warning the victim that he was intruding on his drug sale territory. He chased and shot at White for almost two tenths of a mile. Two gunshots entered White's back, consistent with the conclusion that they were sustained during the chase. The victim was found lying on his back in the parking lot. The medical examiner testified that, while awkward, the head wound could have been sustained in that position, but it was unlikely that the back wounds were. A witness heard [petitioner] say that he was going to kill White just before the last shot was fired. There is no merit to [petitioner's] argument. Point denied.

(Respondent's Exhibit E, pp. 3-4).

The resolution of ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams, 529 U.S. at 412.

Ground 2 is denied.

## **GROUND 4**

In ground 4, petitioner contends that trial counsel was ineffective for failing to investigate, consult, retain, and call an independent forensic expert to testify at trial. In order to succeed on a claim of ineffective assistance of counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonably probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> On a claim of ineffective assistance of counsel, the burden is on the movant to prove by a preponderance of the evidence that (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) counsel's failure prejudiced him. [*Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009)] (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A strong presumption exists that counsel's conduct was reasonable

> and effective. *Id.* at 176. To show prejudice, the movant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*
>
> Trial counsel's choice of witnesses is a matter of trial strategy. *Bucklew v. State*, 38 S.W.3d 395, 398 (Mo. banc 2001). "Strategic choices made after thorough investigation are essentially unchallengeable." *Bucklew*, 38 S.W.3d at 398. To establish ineffective assistance of counsel for failure to call a witness, [petitioner] must show that the witness could have been located by reasonable investigation, the witness would have testified at trial if called, and the testimony would have provided a viable defense. *Id.*
>
> [Petitioner] did not clearly show that the failure to call Mr. Rini was not trial strategy. Dr. Gill, the medical examiner, admitted that the wounds to the victim's chest were inconsistent with him being shot while lying face up and that it was "possible" that the injury to his head was inconsistent with him being shot while lying in that position. Additionally, Officer Van Ryn testified that if shots had been fired in the Fist Town parking lot, he would have expected to find shell casings there but that he did not. Mr. Rini's conclusion, based on the absence of bullets or shell casings in the parking lot and the angle of the bullet wounds on the victim's body, that the physical evidence did not support the conclusion that the victim was shot while lying in the parking lot would have been cumulative to the evidence adduced through the State's witnesses. Failure to produce cumulative evidence does not constitute ineffective assistance of counsel. *Ferguson v. State*, 325 S.W.3d 400, 417 (Mo. App. W.D. 2010).
>
> Furthermore, defense counsel testified that he chose not to call Mr. Rini to testify because Mr. Rini's report was incomplete. Mr. Rini analyzed only the Fish Town parking lot crime scene and did not examine Ms. Shepard-Bowen's yard where police found several shell casings. In light of Mr. Rini's susceptibility to cross-examination regarding the incompleteness of his report, defense counsel was not ineffective in not calling him as a witness. *See Bucklew*, 38 S.W.3d at 398 (defense counsel was not ineffective for failing to call an expert whose testimony would have had a mixed impact).

(Respondent's Exhibit K, pp. 7-8).

The resolution of ground 4 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

-11-

Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000). Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 4 is denied.

## MOTION FOR SUBPOENAS & REQUEST FOR DISCOVERY

Additionally, petitioner has filed a motion for subpoenas (Doc. No. 9) and a request for discovery (Doc. No. 10), both of which are necessary only when there is a need for an evidentiary hearing. An evidentiary hearing is not warranted where a habeas corpus petition can be denied based on claims addressed in the state court record. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398-1401 (2010). For procedurally defaulted claims, a petitioner is not entitled to an evidentiary hearing to support a claim of actual innocence. Burton v. Dormire, 295 F.3d 839, 845 (8th Cir. 2002). Because all of petitioner's grounds are either without merit or procedurally defaulted, no evidentiary hearing is appropriate. Therefore, petitioner's motion for subpoenas and request for discovery are denied as moot.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. §

2254, Rule 11(a).

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice;

(3) the issuance of a certificate of appealability is denied; and

(4) petitioner's motion for subpoenas (Doc. No. 9) and request for discovery (Doc. No. 10) are denied as moot.

     /s/ Beth Phillips
BETH PHILLIPS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: July 31, 2012.